EILER *v.* TIFFANY.

1. EQUITY — CLEAN HANDS — PLAINTIFF USING UNCONSCIONABLE METHODS NOT ENTITLED TO EQUITABLE RELIEF.

   In suit for partition against good-faith purchasers by one who obtained quitclaim deed to one-half interest in land from heir of former partner's wife by using unconscionable methods, court below properly held that plaintiff did not come into court with clean hands and therefore was not entitled to aid of court of equity.

2. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.

   Testimony by husband that property deeded by him to his wife was afterward deeded back to him and deed lost was properly excluded, where wife was dead, as being equally within knowledge of deceased.

3. LOST INSTRUMENTS—EVIDENCE SUFFICIENT TO ESTABLISH LOST DEED.

   Positive testimony by competent witness as to execution of deed by wife to husband of property he had previously deeded to her, which was not rebutted and was supported by other inferential facts, justified finding by court below that said deed was executed, although it was lost and never recorded.

On right of action to restore lost deed, see annotation in 31 A. L. R. 552.

Appeal from Berrien; White (Charles E.), J. Submitted October 11, 1929. (Docket No. 80, Calendar No. 34,592.) Decided January 24, 1930.

Bill by William A. Eiler against Luther S. Tiffany and another for partition of real estate. Willis L. Veley intervened as a party defendant and filed a cross-bill. From a decree dismissing plaintiff's bill, plaintiff appeals. Affirmed.

*Alva P. Cady,* for plaintiff.

*Frank I. Kennedy,* for defendants.

BUTZEL, J. For a period previous to May 14, 1913, Willis L. Veley, a defendant in this cause, was the owner of a number of large and valuable parcels of land situated in the township of Chikaming, Berrien county, Michigan. On that day, owing to financial difficulties, he deeded this land to his wife, Alice Veley. He claims in his answer that there was no consideration for such deed, and that some time later his wife executed a deed back to him, but that this latter deed was never recorded and is now lost.

On or about April 22, 1919, defendant Veley and plaintiff Eiler entered into a copartnership for the purpose of owning and operating a summer resort upon these lands. The record is not clear as to what plaintiff contributed to the firm's assets. He, however, helped to finance the business by obtaining loans which were secured by mortgages on the land. The capital of the firm consisted of the land, and in order to vest the ownership of the land in the firm and carry out its purposes, a quitclaim deed of an undivided one-half interest in the lands was executed by Alice Veley and Willis L. Veley and delivered to plaintiff Eiler. Both Veley and Eiler be-

lieved that they became vested with the entire fee, notwithstanding the fact that the record title of a one-half interest to the land still remained in Mrs. Veley. About six weeks after the formation of the copartnership Alice Veley died, leaving as her sole heir a son, one John Fassett, who was a barber in Chicago and who would be entitled to an undivided one-half interest in the lands in which Alice Veley had the record title, provided she still owned such interest.

On May 1, 1923, Eiler and Veley entered into an agreement for the dissolution of the partnership. They then believed that they owned between themselves the entire fee in these lands. In pursuance of the dissolution agreement the land was divided into separate parcels and quitclaims were executed for the purpose of vesting the entire ownership and title of each respective parcel in the partner to whom such parcel was allotted. The dissolution agreement shows beyond any doubt that it was believed that the parties owned the property and that the quitclaims to one another would vest the entire ownership in the respective partners. Plaintiff claims that through his ignorance of the law he believed that defendant Veley upon the death of his wife became vested with the title to the property. He therefore concluded that when he deeded his one-half interest in part of the property to Veley the latter became the sole owner of the property so deeded, and that when Veley deeded his one-half interest in the property to plaintiff, the latter likewise became the sole owner of the property so deeded. It is significant that Veley and wife both joined in the deed to plaintiff when the partnership was entered into. It would indicate that plaintiff knew Veley had an interest in the property. Plaintiff claims that he

came from Illinois where a husband had the right of "curtesy" in his wife's property, and for this reason did not suspect there was anything improper in Veley joining in the deed. He does not explain any irregularity in being in partnership with one who owned no interest whatsoever in the firm's lands. If Mrs. Veley owned all of the property and deeded a one-half interest to plaintiff on the formation of the partnership, she necessarily would have retained the remaining one-half interest, and Veley would not have had any interest in the firm's property. Plaintiff claims that he understood a husband became entitled to a wife's real estate upon her death, and, therefore, for the time being, he paid no further attention to the title to the property.

Subsequent to the dissolution agreement of 1923 and the execution of quitclaim deeds in pursuance thereof, Veley sold and deeded portions of the land allotted and quitclaimed to him to several different grantees, including the present defendants Tiffany. Plaintiff has brought a similar suit to the one under consideration against other grantees.

Defendants Tiffany were *bona fide* purchasers for value. Through an error of the abstractor, the words "an undivided one-half interest" were omitted in the description of the property in the deed from Willis L. Veley and Alice Veley to Eiler in 1919, so that it appeared from the abstract that the entire title was deeded to Eiler, and if this were true, the entire fee in certain parcels would have been vested in Veley upon recording Eiler's quitclaim on the partnership dissolution in 1923. Veley's grantees were thus led to believe that they were receiving a good title to the entire fee. Plaintiff claims that he accidentally discovered that the record title to an undivided one-half interest in the

property still remained in the name of Alice Veley. He thereupon went to Chicago and saw John Fassett, the sole son and heir of Alice Veley. He secured a deed from him of his interest in all of the property involved in and divided upon the dissolution of the firm. By virtue of the Fassett deed plaintiff claims a one-half interest in all of the property deeded by Veley to his various grantees. He has brought this suit for a partition of the property purchased by defendants Tiffany. Veley was permitted to intervene as a party defendant.

The record shows that in dealing with John Fassett plaintiff acted in an unconscionable manner. Plaintiff testified that he only told Fassett that he wanted to clear his own title and did not know whether Fassett had any interest in the property or not. He secured a quitclaim from Fassett for the sum of $250 and a promise to pay $1,250 more contingent upon the court finding that Fassett had title to the land. He did not tell Fassett what the property was worth, or that in obtaining a deed to perfect his record title he was including in the deed very valuable property of defendants and others. The defendants in this suit, as well as defendants in other suits brought by plaintiff, had made extensive and costly improvements upon their property. The land was very valuable. If Fassett owned a one-half interest in all of the property, his interest would have been worth between $30,000 and $50,000. This half interest plaintiff secured for the sum of $250 by withholding the true facts from Fassett, and further, by making him believe that all he was deeding was a doubtful interest in plaintiff's own property.

The lower court very properly held that plaintiff did not come into court with clean hands and was not entitled to invoke the aid of a court of equity. The

court also stated that Fassett must have understood that his mother had or claimed no interest in the property, or that long before 1927 he would have taken steps to enforce his rights. Plaintiff testified that Fassett had attended his mother's funeral and had received his share of her personal effects at that time. He made no claim to the real estate.

Veley undertook to testify in a deposition that after he deeded the property to his wife she deeded it back to him. The trial court properly excluded this testimony as being equally within the knowledge of the deceased. There was other testimony, however, to show that such a deed was executed. While most of it was inferential, one Christian Nielson swore positively to the execution of the deed. He testified that in 1917 he purchased a small parcel of the original tract of land and secured a deed; that he was then requested to withhold his deed from record until the following spring; that in 1918 he saw both of the Veleys together at their home and told them he wanted to record his deed; that Veley stated at the time he was making a change; that Mrs. Veley was deeding the property to him; and that Mrs. Veley then and there stated that she was not feeling well and had made a deed of the property to Veley; that Veley brought out the deed and stated that he copied the description from the old deeds. Nielson testified that Mrs. Veley was present during the conversation and stated that she had deeded the property to her husband. Veley stated he would not record his deed until Nielson had recorded his deed. Nielson was not impeached in any manner, nor was his testimony rebutted. Notwithstanding the fact that an equity case is tried *de novo* in this court, we are impressed with the fact that the trial judge had an opportunity to see the witness. The

trial judge held that Nielson's testimony, particularly in view of the other inferential facts brought out at the hearing, established the fact that Mrs. Veley had deeded the property back to Veley and that when Veley and plaintiff in the dissolution agreement and quitclaim deeds made a division and undertook to vest. the entire ownership of the respective properties, one in the other, they as a matter of fact did so.

In the case of *Taft* v. *Taft,* 73 Mich. 502, plaintiff sought specific performance of an agreement by which he was to receive certain lands upon his father's death. Certain testimony was excluded on account of the rule against testimony being equally within the knowledge of the deceased. Justice COOLEY, who rendered the opinion of the court upholding plaintiff's contention, stated:

"Under our statute concerning the acts and declarations of deceased persons, in suits against their estates, a great deal of testimony is shut out which would not be shut out between living parties. Family dealings between father and son must generally be beyond sight and hearing of third persons. Their mutual confidence precluded calling in witnesses, as it precluded here the execution of papers. If enough is shown by witnesses to make out all the elements of a contract, we must assume that much must have existed further which no third party knew."

A similar situation arose in the case of *Prendergast* v. *Prendergast,* 206 Mich. 525, 532, in which the above quotation from *Taft* v. *Taft* was repeated. The court further said:

"Here there is an apparently disinterested and truthful witness with personal knowledge of the occasion and circumstances of the arrangement who testifies to elements of a contract between the par-

ties of the nature claimed by plaintiff, though it must be conceded not to the extent claimed. What actually passed between father and son, neither can disclose. One is precluded from testifying to it by death and the other by statute."

The trial court granted the prayer in the cross-bill of Tiffany and wife for an affirmative decree, declaring the title of the land involved to be in Veley at the time he made the conveyance to defendants and confirming the title to said land in defendants Tiffany. In doing so we find no error.

The decree of the lower court is affirmed, with costs to defendants.

WIEST, C. J., and CLARK, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred. McDONALD, J., took no part in this decision.