### HARPER v. GUNN.

1. DEEDS—MENTAL COMPETENCY—UNDUE INFLUENCE—EVIDENCE.
    In suit to set aside deed to defendant in which grantor, mother
    of grantee, reserved a life interest, evidence *held*, sufficient to
    sustain finding of circuit judge that plaintiffs had failed to
    establish that grantor was mentally incompetent or subjected
    to undue influence at the time the deed was executed.

2. EQUITY—AFFIRMATIVE RELIEF TO DEFENDANT—CLEAN HANDS.
    In suit to set aside deeds in which defendant, as cross plaintiff,
    sought reformation of deed to herself, she must come into court
    with clean hands, failing which, she would not be entitled to
    affirmative relief prayed.

3. SAME—REFORMATION OF INSTRUMENTS—CLEAN HANDS—RATIFICA-
    TION OF FRAUDULENT MISCONDUCT.
    In suit to set aside quitclaim deeds given by plaintiffs to their
    sister, and for an accounting by her, wherein she sought refor-
    mation of warranty deed to her from her mother in order to
    correct description, defendant as cross plaintiff would not be
    entitled to relief on ground that the quitclaim deeds were
    procured through alleged fraudulent misconduct of her lessee
    under an oil and gas lease and that she herself was an innocent
    nonparticipant since she cannot profit by such misconduct, as a
    matter of law, except as she ratifies the same and places herself
    *in pari delicto.*

4. SAME—CLEAN HANDS—REFORMATION OF INSTRUMENTS—FRAUD.
    Evidence *held,* to show that cross plaintiff was guilty of fraud-
    ulent misconduct towards her brother and sisters in relation to
    conveyances of title of land formerly in their mother and hence
    was not entitled to reformation of deed from mother to her-
    self to correct description since she is not before the court
    with clean hands.

5. ACCOUNTING—CREDITS FOR IMPROVEMENTS, REPAIRS OR TAXES.
    Grantee under quitclaim deed, who obtained same under such
    circumstances that it was set aside in suit by grantors and
    accounting required, was entitled to credit for money expended
    in improving or repairing the property involved or in paying
    taxes thereon.

---

Transfer of land induced by fraud and misrepresentation, see Re-
statement, Restitution, §§ 28, 39.

Payment for labor and money expended caring for property to be
restored, see Restatement, Restitution, § 42 (3).

Wrongful acquisition of title, see Restatement, Restitution, § 130.

Appeal from Ogemaw; Shaffer (John C.), J. Submitted January 15, 1941. (Docket No. 33, Calendar No. 41,364.) Decided April 8, 1941.

Bill by James Harper and others against Alice Harper Gunn and others to cancel a quitclaim deed and have an accounting. Cross bill by Alice Harper Gunn seeking reformation of a warranty deed. From decree canceling the quitclaim deed and granting reformation sought by defendant Gunn, plaintiff appeals. Reversed in part and remanded.

*Yeo & Bilitzke,* for plaintiffs.

*Seaborg & Rice,* for defendants.

NORTH, J. Plaintiffs and defendants Alice Harper Gunn and Clyde Harper are the children and heirs at law of Fannie Harper, deceased. As survivor of her husband Fannie Harper became the owner of certain real property in the city (formerly village) of West Branch, Ogemaw county. On July 1, 1933, Fannie Harper executed a warranty deed, reserving a life estate, to her daughter, Alice Gunn; and it is a fair inference from the record that by this instrument the grantor intended to convey all her real estate in West Branch to Alice Gunn. But the description used by the scrivener, which was copied from an erroneous description on the tax assessment roll, did not describe any of the property to which Fannie Harper held title. At the age of 71 years, she died intestate December 15, 1935. Thereafter a quitclaim deed was obtained from plaintiffs and defendants Claude Harper and wife by which title to the West Branch property became apparently vested in Alice Gunn. It is alleged by plaintiffs and clearly established

that the purported signature of plaintiff James Harper on this quitclaim deed was a forgery. And it is further alleged that as to other plaintiffs the quitclaim was fraudulently obtained. It was executed by Edna Harper Walker on Sunday and never acknowledged by her. The quitclaim deed was recorded February 22, 1936. Thereafter Alice Gunn received certain rental income and oil royalties from the property. Alleging the quitclaim deed to be a cloud upon their title, plaintiffs by their suit in equity asked "that the instruments involved in the fraud upon plaintiffs may be canceled for said fraud;" and also that they have an accounting by defendant Alice Gunn for the income received from the property in suit.

By cross bill defendant Alice Gunn, on the ground of alleged mutual mistake, sought reformation of the deed from her mother so that the description of the property would be corrected. The defendants, other than those before referred to, are interested in various ways in oil and gas rights in the premises. The rights of such defendants are not challenged in any way by the other parties to this suit; and therefore such defendants may be considered as merely nominal parties.

After full hearing the trial judge entered a decree canceling the quitclaim deed to defendant Alice Gunn. No appeal was taken by Alice Gunn, and therefore that phase of this suit was finally determined by the decree in the trial court. But the trial court granted the relief sought in the cross bill of Alice Gunn and denied an accounting. From the decreed reformation of the warranty deed given by Fannie Harper to defendant and cross plaintiff Alice Gunn and denial of accounting, plaintiffs have appealed.

We are in full accord with the finding of the circuit judge, notwithstanding plaintiffs' allegations

to the contrary, that the testimony taken does not sustain plaintiffs' claim that at the time their mother gave the warranty deed to Alice Gunn the grantor in the deed was mentally incompetent or subjected to undue influence. Among the questions raised by appellants are that the trial judge was guilty of an abuse of discretion in permitting Alice Gunn to file a cross bill of the character hereinbefore noted after the case was called for hearing; also numerous complaints concerning the admission of testimony in behalf of cross plaintiff which testimony was equally within the knowledge of the deceased; and further that since the warranty deed to cross plaintiff from her mother was without consideration, the grantee therein cannot be decreed reformation. Because of the manner in which we reach decision herein, it is unnecessary to discuss any of the above questions.

In so far as defendant Alice Gunn by her cross-bill seeks reformation of the warranty deed from her mother, this cross plaintiff is in a court of equity asking affirmative relief; and it is elementary that under such circumstances she must come before the court with clean hands. *Margolis* v. *Kingon,* 257 Mich. 168. Failing of this, she is not entitled to be decreed affirmative relief. Relying upon facts and circumstances of the character hereinafter noted, appellants insist that the trial court erred in granting Alice Gunn affirmative relief, she having indulged in conduct in connection with the transaction in suit which was decidedly far from being just or equitable. As bearing upon this phase of the case a more detailed statement of facts disclosed by the testimony is essential.

It was not until after the death of their mother, Fannie Harper, that plaintiffs first learned of the deed from her to Alice Gunn. There is testimony in behalf of cross plaintiff that this information was

withheld from other members of the family at the mother's request. About six months after the death of Mrs. Fannie Harper and in July, 1936, oil was discovered on the Harper property. In January, 1936, cross plaintiff gave an oil lease on property which she supposed her mother had deeded to her. This lease ran to Joseph Molloy, who described himself as an "oil promoter." Later Molloy discovered the description in his lease was erroneous. He checked either the record or the original deed from Mrs. Harper to Mrs. Gunn and discovered that the description in that instrument was also erroneous. He thereupon prepared or caused to be prepared another lease and also a quitclaim deed containing proper descriptions. Evidently this was in contemplation of securing the signatures of the other heirs of Mrs. Fannie Harper to the quitclaim deed and thereby placing title in Alice Gunn; and also of enabling Molloy to obtain Mrs. Gunn's signature to a corrected oil and gas lease. After preparing these instruments Molloy made a trip from West Branch to Detroit, where the members of the family, except James Harper, resided. Molloy took the matter up with cross plaintiff. There was no difficulty in securing the signatures of defendant Clyde Harper and his wife, because Clyde seemed to be willing that Mrs. Gunn should have the property. There is conflict in the testimony as to just what occurred in securing the signatures of Blanche Harper Conway and Edna Harper Walker. Both Mrs. Gunn and Molloy were active in securing grantors' signatures to the quitclaim deed. The testimony is undisputed that the signature of plaintiff James Harper was a forgery, and the testimony fairly discloses that cross plaintiff was aware of it at the time. It is likewise clear that as to at least some of the grantors in the deed the purported

acknowledgment before the notary was fictitious. As to some of the grantors it quite definitely appears that the signatures were obtained under the misrepresentation that they were signing an oil and gas lease in consequence of which they were supposed to participate in the royalties. We are not at all persuaded that cross plaintiff's explanation of this transaction leaves her in the position of an innocent nonparticipant. Her claim in substance is that Molloy desired to obtain a valid oil and gas lease and in an effort to accomplish this he was the one who was responsible for whatever fraud and deceit, if any, may have been employed. Molloy, testifying as a witness for defendant Alice Gunn, disavowed any participation in the fraudulent misconduct, at least he avoided admitting he was a participant. Even if cross plaintiff's contention were true, still she has persistently asserted a right to the property and the oil royalties, relying upon this fraudulent transaction. As a matter of law cross plaintiff cannot profit by Molloy's misconduct except she ratifies the same and places herself *in pari delicto.* Certainly it must be so held in a court of equity wherein she is seeking affirmative relief. The good faith of cross plaintiff herself is seriously challenged by the fact that notwithstanding she promptly learned of the forgery of the name of her brother James Harper, she did not reveal that fact to him. A further circumstance indicative of cross plaintiff's bad faith is that under her own testimony it was the desire of her mother and an understanding between the two that in event oil or gas royalties in a substantial amount accrued incident to development of this property, cross plaintiff should share such income with the other children. Royalties in a substantial amount did accrue prior to this litigation. Cross plaintiff when testifying admitted re-

ceipt of approximately $1,500; but she has never done or offered to do equity by accounting to plaintiffs for such accruals. Further, while there is some explanation in the record, it is a rather strange circumstance that cross plaintiff did not produce and claimed she was not able to produce the quitclaim deed in which she was the grantee. This deed was recorded; but since cross plaintiff has not conveyed title to the land, seemingly she would have retained and be in possession of this instrument secured for the purpose of perfecting her title.

We forego further review of the facts established by the testimony in the trial court. The record satisfies us that cross plaintiff, Alice Gunn, is guilty of fraudulent conduct towards plaintiffs in relation to the subject matter of this suit. She is not before the equity court with clean hands. She is not equitably entitled to affirmative relief. *Eiler* v. *Tiffany,* 249 Mich. 269; *Parker* v. *Beckwith,* 251 Mich. 434; *Margolis* v. *Kingon, supra; Menard* v. *Menard,* 295 Mich. 80.

That portion of the decree entered in the circuit court granting reformation and denying an accounting will be reversed, and the case remanded for an accounting. If, as is claimed by cross plaintiff, she has expended money in improving or repairing the Harper property or in paying taxes thereon, she should be given credit for such items as against the amount which otherwise would be decreed against her in the accounting. A decree may be taken in this court in accord with the foregoing. Appellants will have costs of both courts to be taxed against defendant Alice Harper Gunn.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, McALLISTER, and BUTZEL, JJ., concurred with NORTH, J. WIEST, J., concurred in the result.