234 So.2d 32

**Paul R. MALONE et al.**

v.

**STATE of Alabama, ex rel. MacDonald GALLION, Attorney General, etc.**

**3 Div. 275.**

Supreme Court of Alabama.

April 2, 1970.

Rehearing Denied April 30, 1970.

Clement, Rosen, Hubbard & Waldrop, Tuscaloosa, Wright & Long, Montgomery, for appellants.

MacDonald Gallion, Atty. Gen., Leslie Hall, Asst. Atty. Gen., Joseph S. Mead,

Special Asst. Atty. Gen., Birmingham, for the State.

MERRILL, Justice.

This is an appeal from a decree and judgment in favor of the State of Ala-bama in an equity suit which sought to recover for five quarterly payments alleged to have been due from appellant Malone pursuant to an alleged contract between appellant and the State Board of Education of Alabama, and sought to recover the penalty on appellant Malone's surety bond from the appellant Auto-Owners Insurance Company of Lansing, Michigan.

Under the terms of a contract dated January 1, 1956, between the State Board of Education (hereinafter referred to as the Board) and Malone, the Board appointed Malone to maintain a textbook depository. Malone was to retain 20% of the retail price of all textbooks sold by him as full compensation for his services. He agreed to pay over to the Board an amount equal to 5% (later changed to 3%) of the aggregate retail purchase price of all textbooks sold by him. He further agreed to pay the Board 5% (later changed to 3%) of the price of all books purchased by the State at wholesale price for free distribution. Malone also agreed that the books purchased by counties and cities for free distribution would be sold at the retail price, less 10%, and that he would pay the Board 5% (later changed to 3%) of the proceeds of these sales. Local retail dealers, who sold books to parents and students, were to receive a commission of not less than 8% for their services.

The retail price of the books was set by the Board at 20% above the price which was paid to the publisher by Malone. Under the contract, the Board paid the publishers' cost of the free textbooks furnished by the State to Malone, and Malone paid the publishers for the free and non-free books, but he paid the 3% of the established price to the Board on all books as the appointed "State Textbook Depository with the right and privilege of handling, selling and distributing all State adopted textbooks for the public schools of the State of Alabama." The Board had this authority under a 1945 Act listed as Tit. 52, § 433(9) of the 1958 Recompilation.

Malone paid the Board in quarterly payments. Through the years the Board had held, but not cashed, the checks until several were received, and then those which had accumulated were cashed and used to help pay the publishers for the free textbooks for which the Board was responsible.

This practice of holding the checks was explained by the then State Superintendent of Education, Dr. A. R. Meadows, who testified that the Attorney General had ruled that any moneys left in the Textbook Fund on September 30th of each year would revert to the Educational Trust Fund and have to be appropriated by the legislature. At one time, $50,000.00 did revert and was not spent for textbooks. Therefore, since the money was from the sale of textbooks, the checks were not cashed until it was time to pay the publishers for the textbooks furnished free by the State. This practice began in 1955 and was followed every year while Malone handled the textbook depository.

In 1963, Malone became aware that efforts were being made to cancel his contract, and he later received notice that his contract was cancelled. At that time, five of his checks totaling $114,089.06 were held by the Board. He stopped payment on the checks and they were not honored when presented. This suit was filed in equity to collect this amount, plus interest, in June, 1964.

Following considerable pleading, in which appellant Malone sought affirmative relief by set-off and recoupment, the cause was heard, testimony taken and the trial court found for the appellee and against appellants on all pleas and defenses and rendered judgment for the total amount of the checks, plus interest, and against the surety in the amount of its $50,000.00 bond.

The parties agree in brief that there is no material conflict in the evidence. The points raised by appellants, are strictly ones of law.

Appellants' assignment of error 10 and other related assignments raise the point that the demurrer to the bill as a whole, as last amended, should have been sustained because the action, in equity, was improper.

This action was brought under Tit. 7, §§ 74 and 75, Code 1940, which provide:

"§ 74. Suits for money wrongfully used.—In the event any public officer or any agent of the state, or any depositary or custodian of the public funds or moneys, has wrongfully used such funds or moneys, suits for the recovery thereof may be instituted at law or in equity, before any court having jurisdiction of the subject-matter; and it shall not be ground of objection to such suit that either, or any, or all of the parties defendant do not reside within the county, or within the district in which such suit is instituted."

"§ 75. Suit in equity.—Such suit may be instituted in a court of equity without the statement or assignment of any special cause for equitable interference; and such officer or agent, such depositary or custodian, and the sureties on his official bond, or any one or more of them, may be joined as parties defendant; and any person who has wrongfully received such moneys or funds from such officer, agent, depositary, or custodian, may also be joined as a party defendant. No objections to such suit because of multifariousness must be entertained; nor shall the state be put to an election between the prosecution of such suit, and any suit at law instituted for the same purpose, or for the recovery of the same claim or demand."

Appellants contend that this action was improperly brought under Tit. 7, §§ 74 and 75, in that it is not brought for the recovery of public funds or moneys and that Malone is not a "public officer or any agent of the state, or any depositary or custodian of the public funds or moneys."

First, we consider the question whether the $114,089.06 comes within the definition of "public funds or moneys." In the context used in the statute, it obviously means "belonging to the State." There is no question but the money was due the State under the contract, that Malone had conceded that it was due and wrote the checks, and that had the checks been cashed promptly, the money represented by them would have been · in the possession of the State. It is plain that this was money belonging to the State and the amount was contested neither by Malone nor the Board. We hold that it was "public funds or moneys."

Next, we agree that Malone was not a public officer. But we are convinced that he was an agent of the State by virtue of the contract, and a depositary or a custodian of public funds or moneys. Malone was performing functions of a public nature which, under the statute, could have been performed by the Board or by "individuals, corporations, and county and city boards of education" with which the Board was given "full power and authority to contract with." Tit. 52, § 433(9), supra. And the first sentence of § 433(9) reads: "It shall be the duty of the state board of education to provide for the distribution of textbooks in the State of Alabama by such method and in such manner as said board deems to the best interest of the patrons of the public schools."

There can be no question but that Malone was acting as an agent and a custodian of public funds or moneys under his contract with the Board, and the Board was empowered under the statute to enter into such a contract. When he stopped payment on the checks which represented public moneys belonging to the State and transferred them to a new account, labeled "Paul Malone, Agent," he laid himself liable to be sued in equity under Tit. 7, §§ 74 and 75.

There is also the question of a fiduciary relationship between Malone and the Board. We think the allegations of the bill averred circumstances which would authorize the court to impose a constructive trust upon the funds, but it is not necessary to pursue that subject in view of our holding that the statute authorizes the suit in equity.

Appellants contend that the trial court erred in awarding relief because the contract sued on is void as against public policy.

We do not propose to answer this contention, but our failure to consider it in detail is not to be construed or understood that we think the contract is against public policy.

He who comes into equity must come with clean hands is one of the recognized maxims in equity. We think it is applicable here. This question is not raised in brief, but the maxim of unclean hands may be applied by the court sua sponte whether the question was raised in the lower court or not. McInnis v. Sutton, 260 Ala. 432, 70 So.2d 625; Moore v. Hawk, 270 Ala. 684, 121 So.2d 904; Baird v. Howison, 154 Ala. 359, 45 So. 668, 30 C.J.S. Equity § 97, p. 1031.

The rule that he who comes into equity must come with clean hands applies as well to a defendant who seeks affirmative relief as to a plaintiff. Hazard Coal Corporation v. Getaz, 234 Ky. 817, 29 S.W. 2d 573; Harper v. Gunn, 297 Mich. 396, 297 N.W. 538, 30 C.J.S. Equity § 96, p. 1028. See Owens v. Owens, 281 Ala. 239, 201 So.2d 396.

Here, appellants requested affirmative relief, and we think the following presents a good case for its application. Malone sought the contract and enjoyed its benefits for more than eight years. His accountant testified that Malone's net profits as State Textbook Depository for the following years were: 1959–$182,-303.04, 1960–$129,642.24, 1961–$136,110.90, 1962–$137,009.67, 1963–$125,869.99. The

evidence also shows that Malone sold to his successor, EBSCO Investment Service, Inc., all furniture, fixtures and equipment used in connection with the State Textbook Depository for $32,450.00, a five-year noncompetition agreement and other intangibles for $92,550.00, and Malone agreed to rent his warehouse to his successor for $2,000.00 per month.

In his original contract with the Board, Malone had agreed to maintain at least three local depositories in each county. in the state. In the latter part of 1962, an employee of the Board made an audit and listed forty-three counties in Alabama with less than the three local depositories. The evidence also showed that various principals and teachers would sometime write in for workbooks or textbooks when the local depository could not supply them, and Malone sought to substitute these various individuals for local depositories. Ten of these purported local depositories testified that they were not local depositories or agents of Malone, and their only contact with the State Depository was when they ordered books which were not available at the local depository.

After enjoying a good business and a good net income for years under his contract, and after receiving enough money from his successor to take care of special investment in furniture, etc., Malone will not now be heard in a contention that the contract was void. He has derived too many substantial benefits from the contract and waited until the contract with him was cancelled to contend for the first time that it was void. We forego further consideration of that contention.

Assignments of error 17, 18, 19 and 20 charge that the trial court erred in holding appellants' pleas in abatement insufficient. These pleas showed that appellee had initiated actions against appellants for this same cause of action in the law side of the Circuit Court of Montgomery County on the same day this suit was filed. Appellants concede in brief that these pleas would be no bar if this cause was properly filed under Tit. 7, §§ 74 and 75, Code 1940. Having already decided that such action was proper, there is no merit in these assignments of error.

■ Assignments of error 22, 23 and 24 charge error in the denial of appellants' request for a trial by jury filed on January 4, 1967, the date of the oral hearing. This was a year and a half after the bill of complaint had been filed and over eight months after appellants had filed their answer to the bill. Assuming, without conceding, that this was a proper case for a jury, the request was made too late under Tit. 7, § 79, the applicable section in this cause.

■ The failure of a party to request jury trial within the time permitted by statute constitutes a waiver of the right to trial by jury. Jefferson County v. Adwell, 267 Ala. 544, 103 So.2d 143, and cases there cited.

No reversible error is presented in brief.

This case was originally assigned to another member of the court and was reassigned to the author of this opinion on March 23, 1970.

Affirmed.

LIVINGSTON, C. J., and LAWSON, HARWOOD and MADDOX, JJ., concur.