*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NETWORK DESIGNS, LLC,

Plaintiff-Appellee,

v

MUSIC HALL CENTER FOR THE PERFORMING ARTS,

Defendant-Appellant.

UNPUBLISHED
April 29, 2021

No. 351434
Wayne Circuit Court
LC No. 18-009505-CB

Before: O'BRIEN, P.J., and STEPHENS and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's order granting summary disposition to plaintiff under MCR 2.116(C)(10). For the reasons set forth below, we affirm.

## I. BACKGROUND

In approximately 2008, defendant engaged plaintiff to provide information technology (IT) services for defendant's business. For the next ten years, defendant would ask plaintiff to provide IT services for defendant, and, after doing the work, plaintiff would send defendant an invoice for the job reflecting the work performed and the hours spent performing it. In 2018, the parties' relationship soured after defendant refused to pay plaintiff for certain outstanding invoices.

This refusal led plaintiff to file a complaint against defendant. As relevant to this appeal, plaintiff alleged breach of contract and account stated. In support of its account stated claim, plaintiff attached to its complaint a copy of plaintiff and defendant's account, as well as an affidavit from Paul Ott, who claimed that plaintiff had "delivered a copy of the account" to defendant and "[d]efendant has not objected to the bill." Defendant filed an answer to the complaint denying that it owed plaintiff any money, but did not submit an affidavit of its own contesting the amount stated in the account attached to plaintiff's complaint.

Plaintiff eventually moved for summary disposition under MCR 2.116(C)(10), arguing it was entitled to summary disposition on its breach-of-contract and account-stated claims. Plaintiff attached to its motion an affidavit from Trafton Jean, defendant's former chief financial officer,

who stated plaintiff's work was always performed to defendant's satisfaction and, with the exception of one instance, defendant never objected to plaintiff's invoices.

In response, defendant argued that Jean did not have the authority to enter into the contract with plaintiff, and that the statute of frauds barred the contract's enforcement. Defendant also argued that by denying the account-stated claim in its answer, it satisfied its obligations under the law to effectively create a question of fact on plaintiff's account-stated claim.

After a hearing on plaintiff's motion, the trial court granted summary disposition in favor of plaintiff on both claims. Defendant now appeals.

## II. SUMMARY DISPOSITION

On appeal, defendant argues that the trial court erred by granting plaintiff's motion for summary disposition on plaintiff's breach-of-contract and account-stated claims. We disagree.

### A. STANDARD OF REVIEW

This Court "review[s] a motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "Summary disposition is appropriate . . . if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*.

### B. BREACH OF CONTRACT

Defendant first challenges the trial court's decision to grant summary disposition to plaintiff on its breach-of-contract claim. Defendant argues that summary disposition was improper because (1) there was a question of fact whether plaintiff satisfied the implied condition precedent of the contract to perform services in a skillful and workmanlike manner thereby triggering defendant's duty to pay for those services and (2) there was a question of fact whether "the hours expended and amount bill[ed]" by plaintiff were reasonable. Neither argument warrants relief.

#### 1. CONDITION PRECEDENT

In *Nash v Sears Roebuck & Co*, 383 Mich 136, 142-143; 174 NW2d 818 (1970), our Supreme Court explained that in every services contract, there exists an implied duty "to perform in a diligent and reasonably skillful workmanlike manner." According to defendant, this duty was actually a condition precedent to the parties' contract, so plaintiff was required to prove that it satisfied this condition before it was entitled to recovery.

Defendant's argument is based on a mistaken premise. The duty to perform services in a reasonably skillful and workmanlike manner is just that—a duty. It is not a condition precedent. If a party fails to perform a service contract in a skillful and workmanlike manner, then the other party may have a cause of action for negligence or breach of contract. See e.g., *Clark v Dalman*,

379 Mich 251, 261; 150 NW2d 755 (1967) (explaining that a duty generally arises by "operation of law," but also can "and frequently does arise out of a contractual relationship, the theory being that accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract"). Because the duty to perform the contract in a skillful and workmanlike manner was not a condition precedent of the contract, plaintiff was not required to prove that it performed its services in a skillful and workmanlike manner in order to recover on its breach-of-contract claim.[1]

## 2. REASONABLENESS

Defendant next contends that plaintiff was not entitled to summary disposition on its breach-of-contract claim because defendant "clearly disputed the reasonableness of the hours expended and the billing," and questions of "reasonableness" are generally left for a jury to decide. As the trial court recognized, however, defendant's aspersions about the "excessive" hours worked and billed by plaintiff are not relevant to plaintiff's breach-of-contract claim. Defendant contracted with plaintiff to pay plaintiff for the hours that plaintiff worked completing IT services for defendant. Plaintiff reported the hours that it worked to defendant, and pursuant to the parties' contract, defendant then had to pay plaintiff for its time. Defendant is not alleging that plaintiff engaged in some type of fraud such that plaintiff did not actually work the hours for which it requested payment. Instead, defendant is only alleging that plaintiff should have charged less for the jobs it completed. This is not a defense to defendant's obligations under the contract to pay plaintiff for the time plaintiff actually spent completing IT services for defendant.

## C. ACCOUNT STATED

Defendant next contends that plaintiff was not entitled to summary disposition on its account-stated claim. We disagree.

"An account stated is a contract based on assent to an agreed balance, and it is an evidentiary admission by the parties of the facts asserted in the computation and of the promise by the debtor to pay the amount due." *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543, 557; 837 NW2d 244 (2013) (quotation marks and citation omitted). Like all contracts, an account stated requires "mutual assent," specifically "the manifestation of assent by both parties

---

[1] More generally, even if plaintiff failed to perform in a diligent and reasonably skillful workmanlike manner, it would not necessarily bar plaintiff's recovery under the contract. Our Supreme Court in *Nash*, 383 Mich at 142-143, only recognized an implied duty in services contract "to perform in a diligent and reasonably skillful workmanlike manner"—it did not recognize an implied *warranty* in connection with a service contract. A warranty in a contract is "[a]n express or implied promise that something in furtherance of the contract is guaranteed by one of the contracting parties." *Black's Law Dictionary* (11th ed 2019). After *Nash*, this Court in *Co-Jo, Inc v Strand*, 226 Mich App 108, 114-115; 572 NW2d 251 (1997), superseded on other grounds as recognized in *Meadowlark Builders LLC v Evans*, unpublished per curiam opinion of the Court of Appeals, issued February 5, 2019 (Docket No. 341492), p 4, held that while the negligent performance of a service contract may constitute a tort as well as a breach of contract, it does not establish a breach of an implied warranty.

to the correctness of the statement of the account between them." *Id*. at 253 (quotation marks and citation omitted). An account stated is formed when either (1) the parties expressly agree upon the sum due or (2) the party receiving the account does not object within a reasonable time, in which case the receiving party's assent is inferred. *Id*. at 558-559.

In MCL 600.2145, our Legislature provided a burden-shifting procedure for account-stated claims. That statute provides in relevant part:

> In all actions brought in any of the courts of this state, to recover the amount due on an open account or upon an account stated, if the plaintiff or someone in his behalf makes an affidavit of the amount due, as near as he can estimate the same, over and above all legal counterclaims and annexes thereto a copy of said account, and cause a copy of said affidavit and account to be served upon the defendant, with a copy of the complaint filed in the cause or with the process by which such action is commenced, such affidavit shall be deemed prima facie evidence of such indebtedness, unless the defendant with his answer, by himself or agent, makes an affidavit and serves a copy thereof on the plaintiff or his attorney, denying the same. [MCL 600.2145.]

Plaintiff attached to its complaint an affidavit of the amount that defendant allegedly owed plaintiff as well as a copy of the account reflecting the amount that defendant owed plaintiff, and served upon defendant the complaint with the affidavit and the account. Defendant did not attach to its answer an affidavit denying the account. "If an account stated exists, an unanswered affidavit under MCL 600.2145 creates a prima facie case that the party failing to respond owes the other party the amount stated." *Echelon Homes, LLC v Carter Lumber Co*, 261 Mich App 424, 435; 683 NW2d 171 (2004), rev'd in part on other grounds 472 Mich 192 (2005). Therefore, plaintiff's unanswered affidavit created a prima facie case that defendant owed plaintiff the amount stated.

This left defendant with the burden of proving that the amount claimed was inaccurate or otherwise not owed. In arguing that plaintiff was not entitled to summary disposition under MCR 2.116(C)(10) on its account-stated claim, defendant contended that plaintiff could not establish mutual assent because defendant "objected [to] the excessive billing of Plaintiff and refused to pay, ultimately firing Plaintiff." In support of this assertion, defendant attached affidavits from its president and its new IT contractor, both alleging that plaintiff's bills were "excessive."

Accepting defendant's evidence as true for purposes of MCR 2.116(C)(10), it did not rebut plaintiff's prima facie case. Plaintiff established defendant's indebtedness to plaintiff, and the fact that plaintiff's bills were "excessive" does not rebut that indebtedness. Defendant failed to present any evidence tending to establish that it did not agree to pay plaintiff for the services plaintiff provided, or that the amount that plaintiff claimed was owed was incorrect. See, e.g., *Law Offices of Lawrence J Stockler, PC v Rose*, 174 Mich App 14, 53-56; 436 NW2d 70 (1989) (explaining that "[t]here was enough evidence for the court to find that the [defendants] met their burden of going forward with the evidence to rebut [the plaintiff's] prima facie proof of indebtedness" because (1) one of the defendants testified that he "did not agree to pay" for certain services and (2) other evidence established the existence of a contingency fee agreement between the parties that reflected an amount owed to the plaintiff that differed from the plaintiff's prima facie proof of indebtedness); *Echelon Homes*, 261 Mich App at 434-436 (holding that the defendant did not owe

the plaintiff the amount stated in the plaintiff's unanswered affidavit because the defendant sufficiently established that the plaintiff's agent who entered into the agreement with defendant did not have actual or apparent authority to bind the plaintiff to an agreement, so no account existed between the parties).  Defendant asserted only that plaintiff charged too much for its services, which does not rebut plaintiff's prima facie case of defendant's indebtedness.[2]  Because defendant failed to submit any evidence rebutting plaintiff's prima facie case, plaintiff was entitled to summary disposition.  See *Widmayer v Leonard*, 422 Mich 280, 289; 373 NW2d 538 (1985) (explaining that a rebuttable presumption "permits . . . a directed verdict if the opposing party fails to introduce evidence rebutting the presumption").

Defendant spends much time on appeal arguing that plaintiff's invoices could not create an account-stated claim, and at most amounted to an open-account claim.[3]  If plaintiff's account-stated claim was indeed an open-account claim, plaintiff's cause of action could not stand because the parties had "an express agreement for periodic payment," so plaintiff's only remedy against defendant would be through breach of contract.  *Fisher Sand*, 494 Mich at 568.  Defendant acknowledges that an open account can become an account stated if "the parties assent to a sum as the correct balance due from one to the other," *id*. at 554-555 (quotation marks and citation omitted), but contends that such assent was "impossible" in this case.  Defendant ignores, however, that MCL 600.2145 "prescribes a procedure that, when correctly followed, eases the burden on a creditor seeking to collect a delinquent open account by converting it to an account stated." *Lipa v Asset Acceptance, LLC*, 572 F Supp 2d 841, 850 (ED Mich, 2008).  See also MCL 600.2145 (stating in part that "[a]ny affidavit in this section mentioned shall be deemed sufficient if the same is made within 10 days next preceding the issuing of the writ or filing of the complaint or answer").  Accord *Fisher Sand*, 494 Mich at 558 (explaining that a party's assent can be inferred by its inaction).  Plaintiff correctly followed MCL 600.2145 by submitting with its complaint an affidavit and a statement of the account between plaintiff and defendant, and defendant failed to rebut plaintiff's affidavit with an affidavit of its own, thereby "converting" the account into an account stated.  *Lipa*, 572 F Supp 2d at 850.

Similarly, defendant's argument that plaintiff's affidavit could only have created a prima facie case for an open account, and not an account stated, is without merit.  In the days before plaintiff filed its complaint, it furnished a bill on defendant reflecting the total that defendant

---

[2]  On appeal, defendant contends that it "disputed that any amounts were due" to plaintiff.  While it is true that defendant in its answer denied that any amount was owed to plaintiff, it never submitted admissible evidence asserting the same or otherwise establishing that the amount that plaintiff claimed that defendant owed was incorrect.  Because defendant could not "rest upon the mere allegations or denials of [its] pleading" in response to plaintiff's (C)(10) motion, and defendant did not otherwise submit evidence denying that it owed plaintiff the amount stated in the affidavit and account attached to plaintiff's complaint, defendant failed to create a question of fact for trial.  MCR 2.116(G)(4).  See also *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999).

[3] Unlike an account-stated claim, "there is no assent to a balance due" for an open-account claim. *Fisher Sand*, 494 Mich at 563.  "Thus, the creditor may be required to establish the validity of the entries in the account." *Id*.

purportedly owed plaintiff. Defendant never objected to the amount in the bill. Contrary to defendant's protests on appeal, this bill provided a basis for plaintiff's claim of an account stated. While defendant is correct that there would be a question of fact whether its failure to object to the bill in the few days before plaintiff filed its complaint could establish defendant's assent to the amount stated in the bill, that issue is not relevant given plaintiff's compliance with MCL 600.2145. Plaintiff complied with the procedure in MCL 600.2145, and defendant failed to do the same, so plaintiff established a prima facie case that defendant owed the amount stated in plaintiff's bill to defendant.

## III. FRAUD ON THE COURT

Defendant next argues on appeal that it is entitled to relief from judgment on the basis of emails it discovered after the trial court granted summary disposition to plaintiff because, according to defendant, the emails establish that Ott and Jean lied in the affidavits they submitted to the trial court. We disagree.

As relevant to defendant's argument, MCR 2.612(C) provides:

> (C) Grounds for Relief From Judgment.
>
> (1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:
>
> * * *
>
> (c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.
>
> * * *
>
> (3) This subrule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding; to grant relief to a defendant not actually personally notified as provided in subrule (B); or to set aside a judgment for fraud on the court.

As explained by this Court in *Stallworth v Hazel*, 167 Mich App 345, 355; 421 NW2d 685 (1988):

> MCR 2.612 allows two means of obtaining relief from a judgment procured by fraud. A party may obtain relief by motion in the case in which the adverse judgment was rendered, MCR 2.612(C)(1)(c), or the party may proceed by independent action, MCR 2.612(C)(2). The standards for relief under the two sections of MCR 2.612 involve a distinction between extrinsic and intrinsic fraud. Extrinsic fraud is fraud which actually prevents the losing party from having an adversary trial on a significant issue. Perjury is merely intrinsic fraud; while it constitutes fraud in obtaining a judgment, it does not prevent an adversary trial. [Some citations omitted.]

-6-

Defendant here is seeking relief from judgment based on Jean's and Ott's purported perjury, which is intrinsic fraud, so defendant's request is governed by MCR 2.612(C)(1)(c).

Defendant's allegation of Jean's and Ott's perjury is premised on emails it found on Jean's email account after summary disposition was granted. As the *Stallworth* Court explained:

> Because plaintiff's allegation of perjury is dependent upon newly discovered evidence, we conclude that such perjury should warrant relief from judgment only if it could not have been discovered and rebutted at trial by the exercise of due diligence. Any other result would undermine MCR 2.611(A)(1)(f), which allows a new trial based on newly discovered evidence only when that evidence "could not with reasonable diligence have been discovered and produced at trial." [*Stallworth*, 167 Mich App at 356.]

The emails that defendant found after summary disposition was granted were clearly not "newly discovered evidence" because defendant would have been able to discover and produce the emails before summary disposition was granted through reasonable diligence. The emails were on defendant's servers and were therefore in defendant's possession at all times. Plaintiff filed its complaint on August 3, 2018, and defendant, for reasons unknown, did not access Jean's email account and produce the supposedly condemning emails until approximately 18 months later. Defendant gives no reason for its delay, and instead merely asserts that it "did not actually know of Jean's emails" before it produced them. This is of no relevance—it does not explain why defendant was prevented from accessing the emails sooner. Because the emails were in defendant's possession at all times (even if it did not know of them), defendant could have produced the emails before summary disposition was granted through reasonable diligence. Accordingly, the emails cannot constitute newly discovered evidence, and defendant is not entitled to relief from judgment for fraud on the court under MCR 2.612(C)(1)(c).

Even substantively addressing defendant's "newly discovered evidence," the evidence does not warrant relief. In the trial court, plaintiff submitted a copy of the parties' account, and Ott testified in an affidavit that he had reviewed the account and that "[d]efendant has not objected to the bill." Defendant contends that this was a lie based on a March 8, 2018 email that Jean sent to Ott. In the email, Jean voiced concerns about the following numbered invoices: 3200, 3331, 3384, 3413, 3416, 3417, 3418, 3420, 3514, 3515, 3516, 3517, 3518, 3519, 3520, 3545, 3546, and 3668. In the account plaintiff submitted, all of those invoices save 3200 and 3331 were listed. Thus, according to defendant, "Ott's affidavit involved a blatant lie" because defendant clearly objected to a number of the invoices included in the account.

As plaintiff points out, however, defendant failed to provide this Court with the entire email chain between Jean and Ott. A review of the *full* exchange—which was provided by plaintiff—shows that Jean's issues with the invoices were resolved. Ott responded to Jean on March 8, 2018, and, in a lengthy email, addressed all of Jean's concerns about the specific invoices. When Jean responded, he still expressed concerns about invoices 3200 and 3331, but then said that "all of [the] other invoices have been entered no questions asked." Thus, the only invoices that defendant could be said to have objected to when Ott filed his affidavit were invoices 3200 and 3331, neither of which were included in the account. Accordingly, contrary to defendant's assertions, Ott did not lie in his affidavit.

Defendant also alleges that the affidavit that Jean submitted "was clearly false" because he said that he "only complained about an invoice from [plaintiff] on one occasion," while Jean's emails allegedly showed that Jean objected to invoices on several occasions. This assertion by defendant, like its assertion about Ott's affidavit, is simply not supported by the content of the emails that defendant relies on. The only time Jean complained about specific invoices was in the March 8 email, and plaintiff ultimately did not seek payment on two of the invoices that Jean continued to voice concerns about after March 23, 2018—invoices 3200 and 3331. In the other emails pointed to by defendant, Jean asks questions of Ott and occasionally voices concerns, but Jean does object to or otherwise contest any invoices. Thus, none of the evidence that defendant points to as supporting his claim of fraud on the court shows that Jean and Ott lied in their affidavits.[4]

Defendant contends that our Supreme Court's order in *Burnett v Ahola*, 503 Mich 941 (2019), mandates a different result, but defendant misjudges *Burnett*'s significance. The facts and procedural posture of *Burnett* are complex, but many of those details are not important to this case. As relevant here, the defendants in *Burnett* claimed that they were entitled to relief from judgment because the plaintiff submitted fraudulent evidence to the court. A panel of this Court held that the defendants were not entitled to relief because they were "estopped from . . . seeking to redress plaintiff's alleged fraud" and had otherwise impliedly waived their rights to contest the fraud in agreements they reached with the plaintiff. *Burnett v Ahola*, unpublished per curiam opinion of the Court of Appeals, issued August 30, 2018 (Docket No. 338618), p 12 ("Given this history, defendants are estopped from now seeking to redress plaintiff's alleged fraud based on their knowledge of the alleged fraud at the time of the ROPA proceeding and the implied waiver arising from the agreements reached in the interim on the issues of parenting time and custody."). Our Supreme Court ultimately reversed, holding, "Although the plaintiff has asserted the defenses of waiver and estoppel, neither defense applies in this case." *Burnett*, 503 Mich at 941. The Court accordingly remanded the case to the trial court for that court to conduct an evidentiary hearing on the defendants' fraud claim. *Id*.

Here, plaintiff never asserted the defenses of waiver or estoppel, and this Court is not concluding that defendant waived or is otherwise estopped from raising its fraud claim. Thus, *Burnett* does not require a different result.

## IV. USURIOUS LATE FEES

In its final argument, defendant contends that the late fees the trial court awarded under the parties' contract were usurious. Defendant, however, failed to raise this issue in the trial court, so it is waived. As explained by our Supreme Court:

---

[4] Defendant spends much time on appeal invoking the clean hands doctrine, which stands for the proposition that a party who comes before the court with unclean hands is not entitled to relief. *Harper v Gunn*, 297 Mich 396, 399; 297 NW 538 (1941). Assuming that the clean hands doctrine can apply to the set of facts before us, we decline to apply the doctrine to bar plaintiff's claims because the evidence does not support that plaintiff has unclean hands.

Michigan generally follows the "raise or waive" rule of appellate review. Under our jurisprudence, a litigant must preserve an issue for appellate review by raising it in the trial court. Although this Court has inherent power to review an issue not raised in the trial court to prevent a miscarriage of justice, generally a failure to timely raise an issue waives review of that issue on appeal.

The principal rationale for the rule is based in the nature of the adversarial process and judicial efficiency. By limiting appellate review to those issues raised and argued in the trial court, and holding all other issues waived, appellate courts require litigants to raise and frame their arguments at a time when their opponents may respond to them factually. This practice also avoids the untenable result of permitting an unsuccessful litigant to prevail by avoiding its tactical decisions that proved unsuccessful. Generally, a party may not remain silent in the trial court, only to prevail on an issue that was not called to the trial court's attention. Trial courts are not the research assistants of the litigants; the parties have a duty to fully present their legal arguments to the court for its resolution of their dispute. [*Walters v Nadell*, 481 Mich 377, 387-388; 751 NW2d 431 (2008) (quotation marks and citations omitted).]

Defendant contends that consideration of the usurious late fees is necessary to prevent a miscarriage of justice, asserting that "a miscarriage of justice will occur if the judgment, which included over $47,000 in illegal interest, is allowed to stand." However, more than the loss of a money judgment in a civil case is required to show a miscarriage of justice. See *Napier v Jacobs*, 429 Mich 222, 234; 414 NW2d 862 (1987). Accordingly, defendant is not entitled to appellate relief on its usurious-late-fees claim.[5]

---

[5] Even addressing defendant's argument, it does not warrant relief. Defendant simply asserts that the "2% per month finance charge" that plaintiff "added to unpaid invoices after 30 days" was actually interest. Yet the "finance charge" was clearly a late fee, which is not considered interest for purposes of Michigan's usury law. See *Souden*, 303 Mich App at 418 (rejecting the plaintiff's argument that a "finance charge" was usurious because "late payment charges ordinarily do not constitute interest") (quotation marks and citation omitted). See also *Barbour v Handlos Real Estate & Bldg Corp*, 152 Mich App 174, 188; 393 NW2d 581 (1986).

Defendant seems to contend that late fees can be interest because, in *Town & Country Dodge, Inc v Dept of Treasury*, 420 Mich 226, 242; 362 NW2d 618 (1984), our Supreme Court defined "interest" as including charges "for the delay in payment of money." *Town & Country*, however, dealt with how to define "interest" under the Single Business Tax Act (SBTA), MCL 208.1 *et seq*. The usury statute at issue, MCL 438.31, is not part of the SBTA. That said, the act that the MCL 438.31 is part of does not, itself, define "interest." Nevertheless, MCL 438.32 is part of the same act as MCL 438.31, and MCL 438.32 provides that a lender who charges usurious interest is barred from recovering any interest, court costs, attorney fees, *or late fees*. See *Lawsuit Fin, LLC v Curry*, 261 Mich App 579, 590-591; 683 NW2d 233 (2004) (explaining that under MCL 438.32, "lenders that charge interest in excess of [the rate in MCL 438.31] are barred from

V. CONCLUSION

Affirmed.

/s/ Colleen A. O'Brien
/s/ Cynthia Diane Stephens
/s/ Mark T. Boonstra

---

recovering any interest, late fees, or attorney fees"). Because MCL 438.32 lists both interest and late fees, "interest" cannot include late fees, otherwise the inclusion of late fees in the statute would be surplusage. See *Johnson v Recca*, 492 Mich 169, 177; 821 NW2d 520 (2012) (instructing courts to avoid interpretations that would render a part of a statute surplusage). Pursuant to the consistent-usage canon, "interest" as used in MCL 438.32 has the same meaning as "interest" when used in MCL 438.31. See *Consumers Energy Co v Storm*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 350617); slip op at 4 ("Under the consistent-usage canon, it is presumed that the Legislature intends for a word to bear the same meaning throughout a text."). It follows that "interest" as used in MCL 438.31 does not include late fees. This interpretation is consistent with *Souden*'s and *Barbour*'s statements that late fees are not subject to MCL 438.31. Accordingly, even if we considered this issue, defendant would not be entitled to relief.