Zahra, J.
At issue in this case is whether the four-year period of limitations in § 2725 of article 2 of *548 Michigan’s Uniform Commercial Code (UCC),[1] MCL 440.2725, is applicable to actions on either an open account or an account stated when the underlying debt stemmed from the sale of goods. Because actions on an account stated and actions on an open account are distinct and independent from the underlying transactions giving rise to the antecedent debt, neither action is governed by the four-year limitations period provided in § 2725 of the UCC. Rather, both actions are governed by the six-year period of limitations provided in MCL 600.5807(8). Accordingly, we reverse the contrary judgment of the Court of Appeals, which barred plaintiffs open account and account stated actions as untimely, and remand the case to the trial court for further proceedings consistent with this opinion.
I. FACTS AND PROCEEDINGS
Plaintiff provided concrete supplies to defendant commencing in October 1991. Plaintiff timely and regularly invoiced defendant for these supplies. Defendant made sporadic payments to plaintiff in random amounts. Plaintiff maintained an account that recorded the supplies sold to defendant and the payments defendant submitted to plaintiff on that account. Through the course of the litigants’ business relationship, defendant never paid its account in full.[2] Commencing in 2003, defendant acquired from plaintiff less product *549 than it had acquired in prior years. Specifically, defendant made only 4 purchases from plaintiff in 2003 and 10 purchases from plaintiff in 2004. On May 9, 2005, defendant made what turned out to be its final purchase from plaintiff. On that date, plaintiff delivered a small amount of supplies to defendant, for which defendant was invoiced $152.98. Defendant paid the invoiced amount on May 13, 2005, by check. Defendant did not designate on its check that the tendered amount was to satisfy the invoice of May 9, 2005. Plaintiff claims it credited the payment against the open account balance. That was the last payment defendant made to plaintiff.
More than four years later plaintiff sued defendant, claiming that defendant owed plaintiff $92,968.57, including $3,718.32 in finance charges.[3] Plaintiffs claims included breach of contract, unjust enrichment, and account stated.[4] Plaintiff filed an amended complaint on October 29, 2009, adding a claim for amount owed on an open account. Defendant moved for summary disposition pursuant to MCR 2.116(C)(7), arguing that plaintiffs claims were barred by the four-year period of limitations provided in § 2725 of the UCC. Plaintiff countered that defendant’s obligation to pay on the open account was independent of any sale of goods and that its claim was therefore governed by the six-year *550 period of limitations provided in MCL 600.5807(8). Whether defendant’s May 13, 2005, payment was a payment on the open account or a payment for a distinct transaction was also disputed because defendant’s $152.98 payment matched an invoice for the same amount dated May 9, 2005. The trial court held that plaintiffs action was governed by the four-year period of limitations provided in § 2725 because the parties’ open account related to the sale of goods. Therefore, the trial court concluded, plaintiffs claims based on open account and account stated were not timely because the action was commenced more than four years after the claims accrued.[5] A divided panel of the Court of Appeals affirmed in a published opinion, holding that the UCC’s four-year limitations period was applicable to actions on both an open account and an account stated.[6]
*551 The Court of Appeals noted that it was unable to find anything in Michigan’s jurisprudence directly addressing whether the four-year period of limitations in the UCC is applicable to an open account relating to the sale of goods.[7] Plaintiff argued that the UCC did not apply to its claim because “payment on an open account triggers a new obligation, separate and distinct from an underlying agreement.”[8] The Court of Appeals dismissed plaintiff’s contentions because the cases supporting plaintiffs argument did not involve the sale of goods subject to the UCC.[9] The Court of Appeals consulted the official comments to the UCC,[10] which provide that the purpose of article 2 is to take “ ‘sales contracts out of the general laws limiting the time for commencing contractual actions . ...’ ”[11] Though it acknowledged that the official comments do not have the force of law, the Court of Appeals noted that applying the UCC’s four-year period of limitations to actions on open account would accomplish the goal identified in *552 the comments of promoting “uniformity and consistency” among the jurisdictions.[12] The Court of Appeals also noted that “[ojther jurisdictions that have addressed this question have favored applying the UCC limitations period to an action based on an open account related to the sale of goods.”[13]
Judge O’CONNELL dissented, asserting that “[p]ayment on an open account triggers a new obligation, separate and distinct from an underlying agreement,” and therefore, the new obligation is governed by the six-year period of limitations in MCL 600.5807(8).[14] Thus, Judge O’CONNELL would have reversed the judgment of the trial court.[15]
This Court granted leave to appeal to determine whether an action on an open account relating to the sale of goods is subject to the four-year period of limitations in § 2725 of the UCC or the general six-year period of limitations applicable to contract actions in MCL 600.5807(8).[16]
*553 ii. standard of review
MCR 2.116(C)(7) allows a party to file a motion for summary disposition on the ground that a claim is barred because of the expiration of the applicable period of limitations. A movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material. Moreover, the contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant.[17] Appellate review of a trial court’s summary disposition ruling pursuant to MCR 2.116(C)(7) is de novo.[18] Questions of statutory interpretation are also reviewed de novo.[19]
III. ANALYSIS
A. COLLECTION ACTIONS GENERALLY
Michigan has recognized a number of collection actions. These actions include open account claims, mutual and open account current claims, and account stated claims. The purpose of these causes of action is to recover sums due that arose out of a course of dealing between the parties.
Historically the common law has distinguished an open account from a mutual and open account current. An “open account” is traditionally defined as “ ‘1. [a]n unpaid or unsettled account. 2. [a]n account that is left open for ongoing debit and credit entries and that has a fluctuating balance until either party finds it convenient to settle and close, at which time there is a single *554 liability.’ ”[20] This Court has characterized an open account as “ ‘one which consists of a series of transactions and is continuous or current, and not closed or stated.’ ”[21] By comparison, a “mutual account” is traditionally defined as “[a]n account showing mutual transactions between parties, as by showing debits and credits on both sides of the account.”[22] Consistent with this traditional definition, this Court has characterized a mutual and open account current as an account that is both mutual and open, resulting from “a course of dealing where each party furnishes credit to the other on the reliance that upon settlement the accounts will be allowed, so that one will reduce the balance due on the other.”[23]
An account stated action is based on “ ‘an agreement, between parties who have had previous transactions of a monetary character, that all the items of the accounts representing such transactions are true and that the balance struck is correct, together with a promise, express or implied, for the payment of such balance.’ ”[24] Importantly, an open account may be converted into an account stated:[25]
The conversion of an open account into an account stated, is an operation by which the parties assent to a sum *555 as the correct balance due from one to the other; and whether this operation has been performed or not, in any instance, must depend upon the facts. That it has taken place, may appear by evidence of an express understanding, or of words and acts, and the necessary and proper inferences from them. When accomplished, it does not necessarily exclude all inquiry into the rectitude of the account. The parties may still impeach it for fraud or mistake.[26]
In the past these claims have been conflated or treated inconsistently by the Legislature and Michigan courts.[27] For example, the burden-shifting statute (now MCL 600.2145) has expressly included open account claims and claims on an account stated since as far back as the 1870s, but has never expressly included claims on mutual and open accounts.[28] Furthermore, the accrual of mutual and open account claims is governed by MCL 600.5831, while no specific statutory provision exists for the accrual of either open account claims or claims on an account stated.[29]
At times, this Court has not been a model of clarity when addressing collection actions. As previously discussed, this Court has characterized a mutual and open account current as an account that is both mutual and open, resulting from “a course of dealing where each party furnishes credit to the other on the reliance that upon settlement the accounts will be allowed, so that *556 one will reduce the balance due on the other.”[30] But in Fuerbringer v Herman the Court held that payment of money on an account is sufficient to render the account mutual.[31] Allowing payments toward an account to be sufficient to render the account mutual is against the general authority. As observed in Williston on Contracts:
[I]t is generally held essential, in order to constitute such an account as shall fall within the principle in question, that there shall be mutual open, current dealings and claims subject to a future final balance.
A payment, therefore, given and received as partial discharge of an account for goods or services does not make the account mutual; it merely diminishes the amount due on a one-sided account.[32]
The Fuerbringer Court dismissed this Court’s earlier decision in In re Hiscock Estate without analysis,[33] leaving practitioners and lawmakers to wonder whether there is a difference in Michigan between an open account and an open and mutual account current. As recently as 2009, this Court considered whether an action to collect past due attorney fees was an open and mutual account current. While the Court concluded that the action was not an open and mutual account current, this holding was not based on the lack of mutual exchange of credit between the law firm and its client but instead on the fact that the underlying service contract expressly provided the terms of payment.[34]
*557 Notwithstanding these inconsistencies, the common thread in actions on accounts is that they arise “where the parties have conducted a series of transactions for which a balance remains to be paid.”[35] We now turn to the instant matter, which involves an open account claim and an account stated claim.
B. ACTIONS ON AN ACCOUNT STATED
Of the three claims discussed in this opinion, the account stated claim is most clearly defined under Michigan law. An account stated “is a contract based on assent to an agreed balance, and it is an evidentiary admission by the parties of the facts asserted in the computation and of the promise by the debtor to pay the amount due.”[36] This Court has characterized an account stated as “ ‘but an expression to convey the idea of a contract having an account for its consideration, and is no more an account than is a promissory note or contract, having a like consideration for its support.’ ”[37] An account stated, like all contracts, requires mutual assent. Specifically, “[a]n account stated requires the manifestation of assent by both parties to the correctness of the statement of the account between them.”[38]
In his treatise on contract law, Professor Arthur Corbin summarized the nature of an action on an account stated:
If a claimant renders an account and it is assented to as correct by the other party with an express or implied promise to pay, an action may be maintained on the *558 promise. The account stated is a new, independent cause of action superseding and merging the antecedent causes of action represented by the particular items included in the computation.[39]
In White v Campbell, this Court likened the obligation to pay the antecedent debt to that commonly associated with a promissory note:
[T]he agreed statement serves in place of the original account, as the foundation of an action. It becomes an original demand, and amounts to an express promise to pay the actual sum stated. The creditor becomes entitled to recover the agreed balance, in an action based on the fact of its acknowledgment by the debtor, upon an adjustment of their respective claims. The effect of the operation is said to be much the same as though the debtor had given his note for the balance.[40]
The parties to an account stated need not expressly assent to the sum due, as there are instances when assent may be inferred from a party’s inaction-.
[A]s against a party receiving an account, and not objecting to it within a reasonable time, its correctness may be considered as admitted by him, and the balance as the debt; or, in other words, that the party rendering the account may, under such circumstances, treat it as an account stated .... If the party to whom the account is rendered, object[s] within a reasonable time, there is no room for inferring an admission of its correctness.[41]
In other words, the debtor’s new promise to pay is a matter of express or implied contract, depending on the conduct of the parties. When the parties expressly agree to the sum due, the stated account forms an express contract. By contrast, when one party’s assent is in *559 ferred from inaction, the stated account operates to form an implied contract.[42] No matter the method of assent, the debtor in an account stated action has received goods or services without having paid for them, and an action exists when the price of those goods or services is greater than the sum paid.[43]
The Court of Appeals held that because the transactions giving rise to the debt on account related to the sale of goods, the four-year period of limitations set forth in § 2725 of the UCC applies to plaintiffs account stated claim. The Court of Appeals was persuaded by a case from the Oregon Court of Appeals that characterized account stated claims by the nature of the underlying obligations comprising the account. Specifically, the Michigan Court of Appeals relied on Moorman Mfg Co of California, Inc v Hall, which stated that “ ‘ [although an account stated is based on a separate agreement between the parties, it relates to and cannot be divorced from the underlying sales transaction.’ ”[44] But *560 the Moorman Mfg case runs contrary to this Court’s prior pronouncements regarding the materiality of the underlying transactions in an account stated action. As early as 1857 this Court observed:
It is not necessary, in support of an account stated, to show the nature of the original transaction, or indebtedness, or to give the items constituting the account____Neither does the nature of the original transaction, out of which the acknowledgment of indebtedness grew, appear to be material.[45]
It follows, then, that an action on an account stated is indeed an independent cause of action, separate and distinct from the underlying transactions giving rise to the antecedent debt. Therefore, it is immaterial whether the underlying transactions involved the sale of goods.
The Court of Appeals erroneously relied on the official comment to § 2725 of the UCC to arrive at its result. The official comments to the UCC do not have the force of law.[46] When ascertaining the Legislature’s intent, a reviewing court should focus first on the plain language of the statute in question,[47] and when the language of the statute is unambiguous, it must be enforced as written.[48] Examining the plain language of § 2725, Professor Corbin concluded that, because an action on an account stated is not an action “for breach of any contract for sale,”[49] the four-year limitations period does not apply to actions on an account stated:
*561 Recent authorities hold that an action on an account stated arising out of a transaction in goods is subject to the four-year statute of limitations applicable to the underlying goods transaction. Despite the laudable goal of minimizing hardship and confusion for buyers and sellers “doing business on a nationwide scale,” the four-year limitation period of [§ 2725] is inapplicable to an action on an account stated. First, [§ 2725] states that an action “for breach of any contract for sale must be commenced within four years.” . .. An action on an account stated is not an action for the breach of a contract for sale. Rather, it is an action to enforce a subsequent promise to pay an account. Indeed, the action on such a promise is analogous to an action on a promise to pay embodied in a note or letter of credit. An action on either of these formal promises to pay is subject to the limitations period applicable to the promise to pay, not the underlying transaction, which might be a sale of goods.[50]
Because the language of § 2725 plainly states that it only applies to actions on the sale of goods,[51] and an action on an account stated is an action on a promise to pay a certain amount that has nothing to do with any underlying sales transactions, the Court of Appeals erred by relying on the official comment to § 2725 of the UCC. Further, even if the underlying debt stemmed from the sale of goods, the Court of Appeals erred by concluding that the four-year limitations period applies because the nature of the underlying transactions is immaterial.
Therefore, it being established that an account stated is “a contract based on assent to an agreed balance,”[52] an action on an account stated is subject to the six-year *562 limitations period governing general contract actions provided in MCL 600.5807(8).[53]
Applying these legal principles to the present case, plaintiff submitted with its complaint a summary of the account and an “AFFIDAVIT OF ACCOUNT STATED.” Defendant did not expressly assent to the balance due as reflected in this affidavit. Nonetheless, plaintiff claims its statement of the account stood unimpeached at the time the trial court dismissed plaintiffs claims.[54] Having erroneously concluded that plaintiffs claim was time-barred, the trial court did not consider whether defendant had properly objected to plaintiffs statement of the account. On remand, we direct the trial court to consider whether plaintiff presented evidence that defendant assented to plaintiffs statement of the account, either expressly or by implication.
*563 c. actions on an open account
Like account stated claims, actions on an open account have long been recognized in Michigan.[55] Nonetheless, the caselaw defining this claim is far less developed than the caselaw addressing accounts stated. This may be because a suit on an open account is, from a creditor’s perspective, a less desirable claim than an action on an account stated. In an action on an account stated, the creditor must present proof of the debtor’s express or implied assent to the balance due. Upon such proof, the underlying transactions become irrelevant. In an action on an open account, however, there is no assent to a balance due. Thus, the creditor may be required to establish the validity of the entries in the account.[56] Additionally, open account claims were tradi *564 tionally rooted in assumpsit.[57] “Assumpsit” is defined as “1. An express or implied promise, not under seal, by which one person undertakes to do some act or pay something to another <an assumpsit to pay a debt>. 2. A common-law action for breach of such a promise or for breach of a contract .”[58] With the adoption of the General Court Rules in 1963, assumpsit as a form of action was abolished.[59] But notwithstanding the abolition of as-sumpsit, the substantive remedies traditionally available under assumpsit were preserved:
It is to be understood that the abolition of the forms of action does not abolish the remedies thereunder. If a cause of action is stated in the complaint showing the pleader entitled to relief, the appropriate substantive remedy will *565 remain, no matter if the action is labeled as to form or is merely designated as a civil action.[60]
Thus, there is no doubt that plaintiff can pursue a civil action on an open account. Unclear from our jurisprudence, however, is whether an action on an open account, like an action on an account stated, is an independent cause of action, separate and distinct from the underlying transactions giving rise to the antecedent debt, or a claim that is dependent on the underlying transactions.
This Court’s opinion in Goodsole v Jeffery is insightful in distinguishing open account claims from claims based on an antecedent debt that arises from an express contract defining the rights and liabilities of the parties.[61] In Goodsole, the litigants agreed by oral contract that the plaintiff would provide the defendant a piano and the defendant would pay the plaintiff rent of $2.50 per month on the eighth day of each month commencing August 8, 1906. It appears the contract was for an indefinite term. The plaintiff kept a book of the charges and payments. The last charge for rent came on May 8, 1911, and the last payment made to the plaintiff was February 2, 1910. On August 30, 1916, the plaintiff brought suit to collect all unpaid rental charges through May 8, 1911. The plaintiff maintained that since the debt was on an open and mutual account, the entire amount was due and owing. The defendant argued that only unpaid rental charges that had accrued within 6 years of the complaint were collectable. This Court held that the plaintiff failed to establish the existence of an open and mutual account current:
*566 I know of no decision of this court, and think there is none to be found in any jurisdiction, holding that where the dealings of the parties relate entirely to and are governed by a special contract for the payment of money, at agreed upon periods, an open mutual account is established by performance of the contract obligation, whether a book account of it is kept or not.. .. [T]he defendant having pleaded the statute of limitations, judgment should have been directed in his favor .. . .[62]
More than 20 years after Goodsole, this Court again considered the distinction between a claim on an account and a claim based on the underlying transactions giving rise to the debt that arises from an express contract defining the rights and liabilities of the parties. In In re Dei’s Estate, the plaintiff, an attorney, performed legal services for Christina Dei from 1925 to 1933, during which time Dei only made two payments on the account.[63] Dei died in 1935. After the plaintiff was made aware of Dei’s death, he brought a claim against her estate for the unpaid balance on the account. The estate defended against the claim by arguing that any legal services provided more than six years before Dei’s death were barred by the statute of limitations. The Court framed the issue as follows:
As to whether the whole or any part of plaintiffs claim is barred by the statute of limitations, we must first determine whether or not the account as presented was a mutual and open account current. If so, the [entire amount due on the account is collectable.] If not, only those items charged against decedent in her lifetime can be allowed that accrued within six years prior to her death.[64]
*567 In concluding that the relationship between the plaintiff and Dei created an open and mutual account, the Court distinguished its holding in Goodsole. Unlike Goodsole, there was no agreement that defined the terms of payment for the services rendered. Thus, because the particulars of the decedent’s credit relationship with her lawyer were not governed by the terms of the underlying services agreement, the plaintiff had a valid mutual and open account current claim.[65]
This Court recently reexamined In re Dei’s Estate in Seyburn, which also involved a claim for unpaid legal fees.[66] In Seyburn, this Court examined whether a claim for unpaid attorney fees was an action on an open and mutual account current. The Court looked to the retainer agreement and concluded that the parties’ credit relationship was expressly defined by the explicit terms of their agreement for services:
In the present case, it is undisputed that plaintiff and defendant entered into a signed contract containing specific terms. The contract stated that plaintiff agreed to provide legal services to defendant and, in turn, defendant would make payments of money to plaintiff. Specifically, the contract provided for plaintiff to send a billing statement by the 20th of each month, using hourly billing at an established rate, and also required defendant to pay within 10 days of the date of the statement. In addition, the contract defined the liabilities of both parties.[67]
Thus, because the terms of the parties’ credit relationship were provided for in their contract for services, a mutual and open account current claim could not be *568 established on the basis of the parties’ mere failure to perform pursuant to their contractual obligations.
We hold that when an integral component of a transaction for goods or services is an express agreement for the periodic payment of money, an open account claim cannot be established by the mere performance or nonperformance of the contract obligation.[68] Under those circumstances, the creditor’s remedy is to timely pursue a breach of contract action when the debtor fails to live up to the terms of the underlying agreement. But when the credit relationship is not defined as an integral part of the transaction for goods or services, and instead arises from a course of dealing between the parties, an open account claim may arise by implied contract.[69] Applying this holding to the present case, it is unclear whether an integral component of the parties’ transactions was an express agreement for the periodic payment of money. Thus, we direct the trial court to determine as much on remand.
There are several factors that weigh in favor of our holding today. Significantly, for more than 150 years, Michigan courts have recognized actions on an open account. Likewise, for the same period of time our Legislature has recognized this claim, along with a *569 claim for an account stated. These suits are premised on the debt due on the account and rarely discuss the underlying transactions, except to the extent that the transactions provide a defense to the debt.[70]
Recognition of an action on an open account as an independent claim that arises out of the course of dealing between a creditor and debtor also promotes commerce without encouraging creditors to file lawsuits to preserve their right to collect on debts. Assume for example that a merchant sold goods and services on account whereby goods and services would be regularly delivered to a purchaser who in turn made sporadic payments in varying amounts as the relationship developed. As the parties’ relationship nears its fourth year, the merchant would have to insist on settlement of the account or risk the possibility that all or part of the balance due on account could be declared uncollectable after the four-year limitations period on the sale of goods expires. Even if this merchant dealt exclusively in the sale of services, he would face the same dilemma in year six.
We must next determine what limitations period applies to open account claims. For all the reasons stated previously in our analysis of the limitations period for accounts stated, we reject the notion that § 2725 of the UCC applies when the underlying account arises from the sale of goods. The language of § 2725 plainly states that it only applies to actions for breach of *570 contract for the sale of goods.[71] An open account claim is not a breach of contract action for the sale of goods; it is an action to collect on the single liability stemming from the parties’ credit relationship regardless of the underlying transactions comprising the account.[72] Thus, the Court of Appeals erred by holding that the four-year period of limitations provided in § 2725 of the UCC applies to actions on an open account.
We further conclude that an open account, like an account stated, is premised on an express or implied contract. In some instances, the credit relationship between the creditor and debtor may be defined by an express contract.[73] Yet, in other instances, the credit relationship will arise from the parties’ course of dealing.[74] Having established that an open account claim is an action for breach of an express or implied contract, we conclude that open account claims are subject to the *571 six-year period of limitations governing general contract actions provided in MCL 600.5807(8).
An open account claim generally accrues on the date of each item proved in the account.[75] Furthermore, those items “are severally barred when as to them the statute has run.”[76] Partial payment on an account, however, may toll or even remove the statute of limitations under certain circumstances.[77] As recently as 2000, this Court unanimously held that
a partial payment [on a debt] restarts the running of the limitation period unless it is accompanied by a declaration or circumstance that rebuts the implication that the debtor by partial payment admits the full obligation.
This rule is at least as old as Miner v Lorman, 56 Mich 212, 216; 22 NW 265 (1885). Though other aspects of Miner led this Court to conclude that the plaintiff could not prevail in his suit, Justice Cooley’s opinion for a unanimous Court included this explanation:
“The statute does not prescribe what effect part payment of a demand shall have, but it is familiar law that it operates as an acknowledgment of the continued existence of the demand, and as a waiver of any right to take advantage, by plea of the statute of limitations, of any such lapse of time as may have occurred previous to the payment being made. The payment is not a contract; it is not in itself even a promise; but it furnishes ground for implying a promise in renewal from its date, of any right of action which before may have existed.”
The Supreme Court frequently has restated this principle. In Hiscock v Hiscock, 257 Mich 16, 25; 240 NW 50; 78 ALR 953 (1932), a dispute concerning payments on a mortgage, the Court said:
*572 “A voluntary and unqualified payment subsequent to the bar [of the statute of limitations] is the best evidence that the debtor does not claim his legal rights, but, on the contrary, intends to waive them and to perform his moral obligation to pay the whole of the just debt.”
With little discussion, the principle was applied in Wagner v Kincaid, 291 Mich 262, 266; 289 NW 154 (1939). To the same end, we explained in Collateral Liquidation, Inc v Palm, 296 Mich 702, 704; 296 NW 846 (1941), that “[t]he effect of the payment under the statute is equivalent to a new promise.” And in Beaupre v Holzbaugh, 327 Mich 101, 107-108; 41 NW2d 338; 27 ALR2d 532 (1950), this Court said, “In the absence of any showing that payment was not intended by the parties to imply a new promise to pay, the statute was tolled by the payment and the note was not outlawed when suit was begun.”
In recent years, the Court of Appeals has likewise applied this rule. Alpena Friend of the Court ex rel Paul v Durecki, [195 Mich App 635; 491 NW2d 864 (1992)]; Federal Deposit Ins Corp v Garbutt, 142 Mich App 462, 468; 370 NW2d 387 (1985); Bonga [v Bloomer, 14 Mich App 315, 319; 165 NW2d 487 (1968)].[78]
Indeed, consistently with the quoted passage, this Court concluded in Yeiter that the partial payments made less than six years before commencement of the action operated to renew the defendant’s promise to pay the entire amount owed, thereby restarting the six-year limitations period provided in MCL 600.5807(8).[79]
In the instant case, plaintiffs May 9, 2005, delivery of concrete supplies was accompanied by an invoice in the amount of $152.98. On May 13, 2005, defendant rendered payment in the amount of the invoice, but did not pay the alleged balance due. Relying on this Court’s *573 decision in Seyburn,[80] the trial court held that defendant’s May 13, 2005, payment to plaintiff “was a disconnected event which would give rise to a separate obligation on the part of the [defendant. .. Seyburn has no bearing on the accrual of plaintiffs open account claim.[81] Indeed, the instant case is seemingly devoid of an event, such as the termination of the relationship in Seyburn, that would suggest that defendant’s May 13, 2005, payment was disconnected from the other underlying transactions giving rise to plaintiffs claim. Accordingly, the trial court’s conclusion to that effect is questionable. Thus, we direct the trial court to revisit on remand its determination that the May 13, 2005, payment was disconnected from the other transactions in light of this opinion. If the trial court finds that the May 13, 2005, payment — or any other payment within the six-year period preceding commencement of this suit — operated to renew defendant’s promise to pay its entire indebtedness to plaintiff, plaintiffs action will have been commenced within the six-year limitations period provided in MCL 600.5807(8).
IV CONCLUSION
Because both an action on an account stated and one on an open account are distinct from the underlying transactions giving rise to the antecedent debt, neither is governed by the four-year limitations period provided in § 2725 of the UCC. We conclude that both open account claims and actions on account stated are subject to the six-year period of limitations provided in *574 MCL 600.5807(8). Thus, we reverse the contrary judgment of the Court of Appeals and remand the case to the trial court for further proceedings consistent with this opinion.
Young, C.J., and Cavanagh, Kelly, and McCormack, JJ., concurred with Zahra, J.

 MCL 440.1101 et seq.

 Defendant takes issue with the amount claimed due hy plaintiff. Defendant maintains plaintiff owed defendant outstanding sums as a result of work done on a nuclear plant in Midland, a project that was abandoned by Consumers Power Company in 1984. Thus, defendant claims that it was entitled to offset the entire amount that plaintiff claimed it was owed “if such old events were to he litigated.” Plaintiff responds that the alleged open account on which its claim is predicated began in October 1991, more than 6 years after the nuclear plant project *549 was abandoned. Thus, plaintiff claims, any counterclaim for setoff was barred at the time plaintiffs claim accrued.

 The record is not entirely clear regarding the amount that plaintiff claims it is owed. Contrary to the figures used in the complaint and the amended complaint, in plaintiffs brief on appeal in this Court it claims it is owed $91,820.35 for materials provided over the course of the business relationship and $1,362.40 for interest on the account and late payment charges.

 In support of its account stated claim, plaintiff attached as exhibits to its complaint a summary of the account and an “AFFIDAVIT OF ACCOUNT STATED,” the combination of which verified the alleged amount due pursuant to MCL 600.2145.

 Because the trial court granted summary disposition in favor of defendant solely on the basis of its determination that the UCC’s four-year limitations period applied, the court did not decide whether the parties had assented to a sum stated, either expressly or by implication because of defendant’s inaction, thus converting the open account claim to an account stated claim. Nor did the trial court find that defendant’s May 9, 2005, payment of $152.98 revived plaintiffs cause of action.

 Fisher Sand & Gravel Co v Neal A Sweebe, Inc, 293 Mich App 66; 810 NW2d 277 (2011). The Court of Appeals described the statutory context of the dispute:
The Revised Judicature Act provides a limitations period of six years “for ... actions to recover damages . .. due for breach of contract.” MCL 600.5807(8). All sales of goods are governed by Article 2 of the UCC, MCL 440.2102. Section 2725 of the UCC, MCL 440.2725, provides that “[a]n action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued.” .. .
.. . “In actions brought to recover the balance due upon a mutual and open account current, the claim accrues at the time of the last item proved in the account.” MCL 600.5831. Plaintiff contends that its claim accrued on May 13, 2005, the last date on which defendant made a payment. Assuming, without deciding, *551 that defendant’s May 13, 2005, payment may be considered a payment toward the parties’ open account, plaintiffs action was filed in August 2009, more than four years after the May 2005 payment. Thus, if plaintiffs action is governed by the four-year limitations period in the UCC, it is untimely. [Id. at 70-71 (citation omitted).]

 The Court of Appeals referred only to plaintiffs open account action. It is clear from the context of the Court of Appeals’ decision that the Court’s analysis applied to plaintiffs open account action and its account stated action.

 Id. at 72, citing Collateral Liquidation, Inc v Palm, 296 Mich 702, 704; 296 NW 846 (1941), Miner v Lorman, 56 Mich 212, 216; 22 NW 265 (1885), and Bonga v Bloomer, 14 Mich App 315; 165 NW2d 487 (1968).

 Fisher Sand & Gravel, 293 Mich App at 72.

 The official comments are prepared by the National Conference of Commissioners on Uniform State Laws and the American Law Institute. Thomson West, Uniform Commercial Code: Official Text and Comments (2012-2013 ed), Preface, p iii.

 Fisher Sand & Gravel, 293 Mich App at 73 (citation omitted).

 Id.

 Id. Specifically, the Court of Appeals relied on a case from the Oregon Court of Appeals, Moorman Mfg Co of California, Inc v Hall, 113 Or App 30, 33; 830 P2d 606 (1992), which held that
[a]lthough an account stated is based on a separate agreement between the parties, it relates to and cannot be divorced from the underlying sales transaction. The UCC drafters intended that one limitation apply to all transactions involving the sale of goods, regardless of the theory of liability asserted. [Citation omitted.]

 Fisher Sand & Gravel, 293 Mich App at 76 (O’Connell, J., dissenting).

 Id. at 78.

 Fisher Sand & Gravel Co v Neal A Sweebe, Inc, 491 Mich 914 (2012). Absent from our grant order is any reference to account stated actions. Thus it appears that at the time leave was granted we failed to appreciate the distinction between open accounts and accounts stated.

 Patterson v Kleiman, 447 Mich 429, 434 n 6; 526 NW2d 879 (1994).

 Spiek v Dep’t ofTransp, 456 Mich 331, 337; 572 NW2d 201 (1998).

 In re MCI Telecom Complaint, 460 Mich 396, 413; 596 NW2d 164 (1999).

 Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, PC v Bakshi, 483 Mich 345, 355-356; 771 NW2d 411 (2009), quoting Black’s Law Dictionary (7th ed).

 A Krolik & Co v Ossowski, 213 Mich 1, 7; 180 NW 499 (1920) (citation omitted).

 Black’s Law Dictionary (7th ed), p 18.

 In re Hiscock Estate, 79 Mich 536, 538; 44 NW 947 (1890).

 Leonard Refineries, Inc v Gregory, 295 Mich 432, 437; 295 NW 215 (1940), quoting Thomasma v Carpenter, 175 Mich 428, 434; 141 NW 559 (1913).

 While an open account may be converted into an action on an account stated, we are aware of no authority that requires an open account as a prerequisite to an action on an account stated.

 White v Campbell, 25 Mich 463, 468 (1872) (in which the plaintiff brought action on an account stated).

 To the extent the Legislature desires to clarify this area of the law, it might consider revisiting the statutory framework that corresponds with these collection actions.

 See How Stat 7525; 1871 CL 5954.

 See MCL 600.5831 (“In actions brought to recover the balance due upon a mutual and open account current, the claim accrues at the time of the last item proved in the account.”).

 In re Hiscock Estate, 79 Mich at 538.

 Fuerbringer v Herman, 225 Mich 76, 79; 195 NW 693 (1923).

 31 Williston, Contracts (4th ed), § 79.26, pp 389-390 (citations omitted).

 Fuerbringer, 225 Mich at 79.

 Seyburn, 483 Mich at 348.

 1 Am Jur 2d, Accounts and Accounting, § 8, p 628.

 13 Corbin, Contracts (rev ed), § 72.4(2), p 478, citing Restatement Contracts, 2d, § 282, comment c.

 A Krolik & Co, 213 Mich at 8, quoting Auzerais v Naglee, 74 Cal 60; 15 P 371 (1887).

 13 Corbin, Contracts (rev ed), § 72.4(2), p 481.

 Id. at § 72.4, pp 466-467 (emphasis added).

 White, 25 Mich at 468 (citations omitted) (emphasis altered).

 White, 25 Mich at 469, citing Lockwood v Thorne, 11 NY 170 (1854), and Lockwood v Thorne, 18 NY 285 (1858).

 An account stated is an implied-in-faet contract when one party assents by implication because the requisite mutual assent is inferred from the conduct of the parties. See Cascaden v Magryta, 247 Mich 267, 270; 225 NW 511 (1929).

 13 Corbin, Contracts (rev ed), § 72.1(3), p 457. Historically, a promise resulting from an account stated
was enforced because it was a promise to pay a pre-existing debt called by the courts “past” consideration. In reality, the promise is enforced as other subsequent promises, such as a subsequent promise after the receipt of a material benefit or the promise to pay a debt that is barred by the statute of limitations. In each of these factual situations, the retention of a benefit previously received, the goods or services previously rendered, is unjust or the retention of the prior transfer of goods or services cannot be justified on the basis of a legal principle or a legal relationship. This is the fundamental reason for the enforcement of the promise. [Id. (citations omitted).]

 Fisher Sand & Gravel, 293 Mich App at 74, quoting Moorman Mfg, 113 Or App at 33.

 Stevens v Tuller, 4 Mich 387, 388-389 (1857).

 Shurlow v Bonthuis, 456 Mich 730, 735 n 7; 576 NW2d 159 (1998), citing White & Summers, Uniform Commercial Code (3d ed), § 4, p 12; see also Prime Fin Servs LLC v Vinton, 279 Mich App 245, 260 n 6; 761 NW2d 694 (2008).

 Klooster v City of Charlevoix, 488 Mich 289, 296; 795 NW2d 578 (2011), citing Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999).

 Sun Valley, 460 Mich at 236.

 MCL 440.2725.

 13 Corbin, Contracts (rev ed), § 72.4(2), pp 472-473 (citations omitted).

 See also MCL 440.2102 (stating that article 2 of the UCC applies to transactions in goods).

 13 Corbin, Contracts (rev ed), § 72.4(2), p 478.

 A cause of action on an account stated accrues upon an adjustment of the parties’ respective claims against one another. White, 25 Mich at 468 (“The creditor becomes entitled to recover the agreed balance, in an action based on the fact of its acknowledgement by the debtor, upon an adjustment of their respective claims[.Y’) (emphasis added). In other words, the accrual of an account stated claim “occurs when assent to the statement of account is either expressed or implied....” 13 Corbin, Contracts (rev ed), § 72.4(2), p 473. Further, it has also long been established in Michigan law that payment on an account stated renews the running of the period of limitations. Miner, 56 Mich at 216. In Miner, Chief Justice Cooley opined:
[Partial payment of a demand] operates as an acknowledgment of the continued existence of the demand, and as a waiver of any right to take advantage, by plea of the statute of limitations, of any such lapse of time as may have occurred previous to the payment being made. The payment is not a contract; it is not in itself even a promise; but it furnishes ground for implying a promise in renewal from its date, of any right of action which before may have existed, [Id.]

 While defendant does not contest that it owes plaintiff, it does contend that it should be allowed to offset the amount owed plaintiff against money plaintiff owes defendant from prior dealings. This contention is inconsequential to the issue before this Court and, therefore, we take no position on it.

 See Locke v Farley, 41 Mich 405, 406; 1 NW 955 (1879) (“The action was brought on an account for goods alleged to have been sold and delivered to Locke by the defendants in error as a partnership under the name of Farley, Hawey & Co.” A central issue to the case was whether the parties’ affidavits met the requirements of 1871 CL 5954 — one of many predecessors of the modern-day burden-shifting statute, MCL 600.2145. The former statute applied to accounts stated and open accounts alike, as does the current statute); Snyder v Patton & Gibson Co, 143 Mich 350, 351; 106 NW 1106 (1906) (“The suit was brought to recover an unpaid balance upon an account for labor.”); Star Steel Supply Co v White, 4 Mich App 178, 180; 144 NW2d 673 (1966) (“The plaintiff’s suit is based on a statement of the open account with an affidavit of open account. . . .”).

 While a creditor may establish a prima facie case of indebtedness in an open account action by annexing both an affidavit of the amount due and a copy of the account to the complaint pursuant to MCL 600.2145, that action is not required to commence an open account action. A creditor may instead prove his or her account “in the ancient way” by offering testimony and other evidence demonstrating indebtedness. McHugh v Butler, 39 Mich 185, 186 (1878) (“Here the affidavit was made out of time, and when the plaintiff went to trial his situation was no better than it would have been if no affidavit had been made. He was required to prove his case in the ancient way.”); see also Snyder, 143 Mich at 351-352.

 See, e.g., Morrill v Bissell, 99 Mich 409, 412; 58 NW 324 (1894) (“Plaintiff... commenced an action of assumpsit in the circuit court. .. upon an account for goods sold and delivered. The suit was by declaration upon the common counts.”); McHugh, 39 Mich 185 (an assumpsit action in which the plaintiff “sued to recover on an open account and served with the declaration a copy of the account and of an affidavit made by him of the amount due”); Gordon v Sibley, 59 Mich 250, 251; 26 NW 485 (1886) (“[Pllaintiff declared orally in assumpsit for goods, wares, and merchandise sold and delivered by the plaintiff to the defendant, at the defendant’s request, during the year 1883, and claimed damages, $100.”); Grand Dress, Inc v Detroit Dress Co, 248 Mich 447, 448; 227 NW 723 (1929) (“This suit was brought in assumpsit upon an open account. The declaration was on the common counts, accompanied by a bill of particulars.”).

 Black’s Law Dictionary (9th ed), p 142.

 The Michigan Court Rules state that “[t]here is one form of action known as a ‘civil action.’ ” MCR 2.101(A). Former GCR 1963, 110.3 abolished the technical forms of pleading:
All common counts, general issues, demurrers, pleas, fictions and technical forms of action or pleading, are abolished. The form and sufficiency of all motions and pleadings shall be determined by these rules, construed and enforced to secure a just, speedy, and inexpensive determination of all controversies on their merits. [Reprinted in 1 Honigman and Hawkins, Michigan Court Rules Annotated (2d ed), p 176.]

 Committee Comment, reprinted in 1 Honigman and Hawkins, Michigan Court Rules Annotated (2d ed), p 179 (emphasis added).

 Goodsole v Jeffery, 202 Mich 201; 168 NW2d 461 (1918).

 Id. at 203.

 In re Dei’s Estate, 293 Mich 651, 652-654; 292 NW 513 (1940). Although In re Dei’s Estate involved an action on a mutual and open account current, we see no reason why the rationale employed ought not apply to actions on an open account.

 Id. at 655-656.

 Id. at 656-658.

 Seyburn, 483 Mich 345.

 Id. at 357.

 See Goodsole, 202 Mich at 203; In re Dei’s Estate, 293 Mich at 656-658; Seyburn, 483 Mich at 357.

 Justice Markman, similarly to the out-of-state authority on which he relies, recognizes that article 2 of the UCC governs individual sales on credit but declines to acknowledge a distinction between individual sales on credit and serial sales on credit that lack an express agreement for the periodic payment of money that are melded into an account. Any lack of statutory analysis in this opinion stems from the absence of any express mention of actions on accounts in article 2 of the UCC. As previously discussed, this Court’s treatment of these collection actions has been anything but a model of clarity and consistency, and the disagreement between Justice Markman and the majority of this Court is not an unreasonable one.

 Grand Dress, 248 Mich at 448-449 (in which the defendant, through its counteraffidavit, not only admitted indebtedness regarding some items but also disputed some ledger entries on the grounds that the plaintiff had allegedly increased the agreed-to price for a number of items hy $0.25); Star Steel Supply, 4 Mich App at 181-183 (in which the defendant disputed a number of charges on an open account in response to the plaintiffs "affidavit of open account”).

 See also MCL 440.2102 (stating that article 2 of the UCC applies to transactions in goods).

 See the text accompanying notes 49-51 of this opinion. While Professor Corbin’s analysis expressly relates to an account stated, it is informative and persuasive with regard to an open account claim. See 13 Corbin, Contracts (rev ed), § 72.4(2), pp 472-473. While § 2725 applies to actions “for breach of any contract for sale,” an open account claim is no more an action for a breach of a contract for sale than is an account stated claim. (Emphasis added.) Rather, an open account claim is an action to recover the single liability stemming from the parties’ credit relationship. Like an account stated claim, an open account claim is analogous to “an action on a promise to pay embodied in a note or letter of credit.” Id. at p 473. As Professor Corbin noted, an action on a note or letter of credit “is subject to the limitations period applicable to the promise to pay, not the underlying transaction, which might be a sale of goods.” Id.

 See the text accompanying note 68 of this opinion. Of course, when the credit relationship is provided for by the terms of the parties’ contract, those terms shall govern. A credit card relationship is an example of this type of contract.

 See Star Steele Supply, 4 Mich App at 180 (in which the plaintiff entered into a course of dealings with the defendant, selling goods, wares, merchandise, and services on open account); In re Dei’s Estate, 293 Mich at *571 652-654 (in which the plaintiff provided a variety of services to the decedent over the course of years, and the decedent made sporadic payments toward the account over the same).

 1 Am Jur 2d, Accounts and Accounting, § 22, p 644.

 Id.

 Id. at § 24, p 646.

 Yeiter v Knights of St Casimir Aid Society, 461 Mich 493, 497-499, 607 NW2d 68 (2000) (alteration in original).

 Id. at 499-501.

 Seyburn, 483 Mich 345.

 This Court concluded in Seyburn that the parties’ relationship was governed by the explicit terms of their contract and that the plaintiffs claim accrued upon the termination of the attorney-client relationship. Seyburn, 483 Mich at 348.