*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SERENITY HOMES-NORTH, LLC, and
SERENITY HOMES-WEST, LLC,

UNPUBLISHED
June 23, 2022

Plaintiffs-Appellants,

v

No. 355706
Ottawa Circuit Court

LYNNE DOYLE and COMMUNITY MENTAL
HEALTH OF OTTAWA COUNTY,

LC No. 18-005231-CB

Defendants-Appellees,

and

LAKESHORE REGIONAL ENTITY and JEFFREY
L. BROWN,

Defendants.

Before: GADOLA, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

Plaintiffs Serenity Homes-North, LLC, and Serenity Homes-West, LLC, appeal the trial court's order granting summary disposition in favor of defendants Lynne Doyle and Community Mental Health of Ottawa County (CMH) under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. BACKGROUND

This case arises out of plaintiffs' claims that defendants failed to pay for services after CMH clients resided in plaintiffs' homes and that Doyle committed numerous torts.

Plaintiffs are licensed adult foster-care facilities that provide foster care and other mental health services to developmentally disabled and mentally ill individuals and their families. Abraham Joshua is plaintiffs' resident agent. CMH is a program that is funded by federal and state tax funds, and it provides behavioral health services to vulnerable citizens with mental health

issues. At all relevant times, Doyle was CMH's Executive Director and the Chief Executive and Administrative Officer. Lakeshore Regional Entity (LRE) is a prepaid inpatient health plan that is responsible for ensuring that Medicaid funding is available for entities to serve vulnerable individuals. LRE coordinated the management of Medicaid funding for several human service agencies including CMH and also had a quality assurance function regarding service providers. Jeffrey Brown was the Chief Executive Officer of LRE at the time of the acts or omissions that gave rise to plaintiffs' lawsuit.

CMH placed individuals in plaintiffs' facilities. Plaintiffs alleged that their invoices for services were not paid for persons placed at their facilities by CMH. Plaintiffs asserted that Joshua met with Brown in August and September 2017 in an effort to facilitate payment. After the outstanding balances were not paid, plaintiffs filed a formal provider grievance with LRE. The principals of the plaintiffs and the defendants continued to engage in discussions through the end of the year. Plaintiffs alleged that Doyle made defamatory remarks at one of the meetings in November 2017.

In January 2018, plaintiffs filed suit. In relevant part, plaintiffs alleged claims of account stated as to CMH, defamation as to Doyle, and civil conspiracy and tortious interference with a business relationship as to defendants. Discovery commenced, and the tort claims were later dismissed as to CMH. In August 2020, defendants moved for summary disposition under MCR 2.116(C)(10) on the remaining claims against them. After hearing oral argument, the trial court granted defendants' motion. This appeal followed.

## II. STANDARD OF REVIEW

A trial court's decision regarding a motion for summary disposition is reviewed de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks, citations, and emphasis omitted).]

## III. SUMMARY DISPOSITION

### A. ACCOUNT STATED

Plaintiffs argue that the trial court erred by dismissing their account stated claim. We disagree.

"An account stated is a contract based on assent to an agreed balance, and it is an evidentiary admission by the parties of the facts asserted in the computation and of the promise by the debtor to pay the amount due." *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543, 557; 837 NW2d 244 (2013) (quotation marks and citation omitted). Like all contracts, an

account stated requires "the manifestation of assent by both parties to the correctness of the statement of the account between them." *Id*. (quotation marks and citation omitted). An account stated is formed when either (1) the parties expressly agree upon the sum due or (2) the party receiving the account does not object within a reasonable time, in which case the receiving party's assent is inferred. *Id*. at 558-559.

In this case, plaintiffs alleged in the first-amended complaint that defendants owed in excess of $35,000 and that "[t]he account ha[d] become stated between the parties." To support this, plaintiffs attached an affidavit executed by Joshua to the first-amended complaint. Joshua averred that he attended meetings with Brown in August and September 2017 and that Brown "requested payment information details . . . regarding the outstanding invoices. . . ." According to Joshua, Brown indicated that "he 'would take care of it' " if Joshua provided him with "such information. . . ." It is undisputed that plaintiffs never received payment from CMH.[1]

Given these facts, it cannot be said that the parties expressly agreed upon a sum due. Rather, even assuming that Brown could be considered an agent of CMH, the undisputed evidence establishes that Brown did not know the amount allegedly due and requested that Joshua provide him with "information. . . ." Additionally, the evidence does not support that Brown impliedly assented to the sum due. Indeed, it is unclear what, if any, "information" was provided,[2] and the record supports that CMH questioned the amount that plaintiffs alleged was due. While the evidence relied upon by Joshua supports that he *wanted* CMH to pay plaintiffs, the evidence simply does not support that there was "assent to an agreed balance." See *Fisher Sand & Gravel Co*, 494 Mich at 557. Because plaintiffs failed to create a genuine issue of material fact on the account stated claim, summary disposition was proper.

## B. DEFAMATION

Plaintiffs next argue that the trial court erred by dismissing the defamation claim against Doyle. We disagree. The following is required to establish defamation:

(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. [*Hope-Jackson v Washington*, 311 Mich App 602, 620; 877 NW2d 736 (2015) (quotation marks and citation omitted).]

---

[1] Joshua testified that he never attempted to bill the residents with whom he had contracts for the sums he claimed were owed.

[2] Joshua's affidavit vaguely indicates that "[a]ll account records and/or copies of such records are in possession of the Defendants" and, as a result, the amount allegedly due is "incalculable. . . ." However, the affidavit of CMH's accounts payable officer indicates that plaintiffs did "not submit[] invoices to CMH for payments allegedly due and owing. . . ." This statement is supported by the testimony of Doyle.

In the first-amended complaint, plaintiffs alleged as follows with respect to the defamation claim:

54. At [a] November 13, 2017 meeting between Mr. Joshua, Defendant Doyle and various representatives and/or employees of Defendant [CMH], Defendant Doyle alleged that the Plaintiff had been placed under one or more "provisional licenses" and that this was the reason for future placements not being made and/or payments not being made for the services previously provided by the Plaintiffs to the customers.

55. Defendant Doyle knew that these statements were false and made them with reckless disregard so as to show a substantial lack of concern for whether an injury resulted.

56. As a direct and proximate result of the actions and statements of Defendant Doyle, all of which were made in a grossly negligent manner, with a reckless disregard so as to show a substantial lack of concern for whether an injury resulted, or simply in an intentional manner, all while acting and believing she was acting in the scope of her duties as the Executive Director of Defendant [CMH], the Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the community, as well as the loss of business opportunities.

Thus, plaintiffs' defamation claim centers on Doyle's alleged statement at the November 13, 2017 meeting.[3]

We conclude that the undisputed evidence establishes that Doyle's statement was substantially true,[4] which is a defense to a defamation claim. *Rouch v Enquirer & News of Battle*

---

[3] Plaintiffs argue that the trial court "ignored and disregarded the facts clearly in evidence to support the defamation claim." Instead of focusing on the November 2017 meeting, however, plaintiffs focus on communications that did not always include Doyle and that occurred between 2017 and 2020. However, defamation actions must be "pleaded with specificity," *Royal Palace Homes, Inc v Channel 7 of Detroit*, 197 Mich App 48, 52; 495 NW2d 392 (1992), and "[a] party is bound by [his or her] pleadings, and it is not permissible to litigate issues or claims that were not raised in the complaint," *Bailey v Antrim Co*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357838); slip op at 6 (quotation marks and citation omitted; alterations in original), lv pending. Therefore, we will not consider the other alleged defamatory remarks when deciding whether the trial court erred by granting summary disposition on the defamation claim in favor of Doyle.

[4] We acknowledge defendants' argument that Doyle asked a question about the provisional licenses, as opposed to making a statement that plaintiffs' facilities were under provisional licenses. Because Joshua testified that Doyle "declared" during the November 2017 meeting that plaintiffs were under provisional licenses and because the trial court was required to take the

*Creek Michigan*, 440 Mich 238, 258-260; 487 NW2d 205 (1992). Indeed, when "the gist of an article or the sting of the charge is 'substantially accurate,' the defendant cannot be liable." *Hawkins v Mercy Health Servs Inc*, 230 Mich App 315, 333; 583 NW2d 725 (1998).

In September 2017, Ian Tschirhart of LARA recommended a six-month provisional license after substantiating licensing violations in Serenity Homes-North. In October 2017, Briana Fowler of CMH told Doyle that Serenity Homes-North had a provisional license. According to Doyle, this was significant because CMH's clients would have to be moved from plaintiffs' facilities if plaintiffs lost their licenses. At the November 13, 2017 meeting, Doyle brought up the provisional license issue. Joshua denied that plaintiffs were under a provisional license. Fowler thereafter followed up with LARA regarding plaintiffs' licensing status, and Jerry Henrick of LARA told her that the "recommendation for provisional remains in effect. . . ." However, because Joshua appealed the recommendation, Henrick indicated that "it may take a while before things are resolved." Evidence supports that "the provisional license was actually effectuated on the 26th of March 2018" as a result of the September 2017 recommendation. Consequently, because Doyle's alleged statement was substantially true, summary disposition on the defamation claim was proper.

## C. TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

Plaintiffs next argue that the trial court erred by dismissing their claim of tortious interference with a business relationship. We disagree.

In order for a plaintiff to establish a claim of tortious interference with a business relationship or expectancy, a plaintiff must prove:

> (1) [T]he existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted. [*Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 90; 706 NW2d 843 (2005).]

In this case, plaintiffs did not identify any existing valid business relationships or expectancies. Rather, plaintiffs vaguely alleged that Doyle had interfered with their relationships with "numerous consumers." Plaintiffs did not present any evidence to support that Doyle removed "consumers" from plaintiffs' facilities, thereby resulting in termination of plaintiffs' relationships with them. Moreover, the undisputed evidence establishes that Doyle's concerns about plaintiffs' facilities were justified based on complaints by residents and the resulting investigations. See *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 383-384; 670 NW2d 569 (2003) (explaining that the trial court properly granted the defendants' motion for summary disposition when the plaintiffs failed to establish that the

---

evidence in a light most favorable to plaintiffs, we will accept for purposes of this appeal that Doyle actually made a "statement."

defendants were improperly motivated or that they committed an unlawful act). Summary disposition on the tortious interference claim was therefore proper.

## D. CIVIL CONSPIRACY

Finally, plaintiffs argue that the trial court erred by dismissing their civil conspiracy claim. We disagree.

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Swain v Morse*, 332 Mich App 510, 530; 957 NW2d 396 (2020) (quotation marks and citation omitted). A plaintiff cannot establish a civil conspiracy claim without establishing an underlying actionable tort. *Urbain v Beierling*, 301 Mich App 114, 132; 835 NW2d 455 (2013).

The basis for plaintiffs' civil conspiracy claim was that CMH employees, under Doyle's supervision, "waged a calculated and concerted effort to defame, disparage, and injure Plaintiffs' homes and Plaintiffs' sole member and manager, Mr. Joshua." However, for the reasons already discussed, plaintiffs failed to create a genuine issue of material fact to sustain their claims for defamation and tortious interference with a business relationship. Plaintiffs also failed to identify any other underlying actionable tort. Consequently, plaintiffs' civil conspiracy claim fails. See *Smith Living Trust v Erickson Retirement Communities*, 326 Mich App 366, 395-396; 928 NW2d 227 (2018) (holding that the trial court properly granted the defendants' motion for summary disposition when the plaintiff failed to provide sufficient evidence of a separate actionable tort). Summary disposition on this claim was therefore proper.

In sum, the trial court properly granted summary disposition in favor of defendants.[5] It is therefore unnecessary to consider the remainder of the parties' arguments on appeal.

Affirmed.

/s/ Michael F. Gadola
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron

---

[5] We decline plaintiffs' request to remand this matter to the trial court so that plaintiffs can file a second-amended complaint to name "additional defendants." Indeed, plaintiffs fail to cite any authority to support that this remedy is appropriate, and we fail to see how such relief would be appropriate. See *Bailey*, ___ Mich App at ___; slip op at 11-12 (concluding that amendment was inappropriate where discovery had closed and the plaintiff sought to add additional defendants). We also decline plaintiffs' request to "return the matter to the lower court for a hearing on damages. . . ." Indeed, we fail to see how this would be appropriate given that the trial court properly dismissed the claims discussed in this opinion as a matter of law as a result of plaintiffs' failure to create genuine issues of material fact.