*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BUTZEL LONG,

        Plaintiff-Appellee,

v

JOHN Z ORAM,

        Defendant-Appellant.

UNPUBLISHED
November 20, 2024
10:34 AM

Nos. 363083; 363852
Oakland Circuit Court
LC No. 2020-185267-CZ

Before: RIORDAN, P.J., and YOUNG and WALLACE, JJ.

PER CURIAM.

In Docket No. 363083, defendant John Oram appeals as of right the trial court's July 28, 2022 order dismissing this case and ordering him to pay a $20,000 settlement to plaintiff Butzel Long. In Docket No. 363852, defendant appeals as of right the trial court's November 2, 2022 order reinstating this case and entering judgment against him in the amount of $25,000. For the reasons set forth, we affirm in part, reverse in part, vacate in part, and remand to the trial court for further proceedings.

## I. FACTS

On December 17, 2020, plaintiff filed its complaint against defendant, alleging as follows. In December 2016, plaintiff was engaged by Freddie's, LLC ("Freddie's") to provide legal services to Freddie's. In April 2018, defendant, the president of Freddie's, entered into a "Separation Agreement" with the other members of Freddie's essentially providing, in relevant part, that he would be personally responsible for all debt that Freddie's owed to plaintiff incurred on or before April 9, 2018. Plaintiff was not a party to the agreement. But, plaintiff alleged the provision at issue, the "Oram Assumption Agreement," obligated defendant to pay plaintiff over $50,000. At the time the complaint was filed, according to plaintiff, defendant had an outstanding balance of $39,286.87. In Count I, plaintiff sought damages for breach of contract, alleging that defendant breached the Separation Agreement. In Count II, plaintiff sought damages for "open account/account stated." In support of Count II, plaintiff attached to its complaint an affidavit of account stated, indicating that defendant owed plaintiff $39,286.87.

-1-

On April 30, 2021, plaintiff moved for summary disposition under MCR 2.116(C)(9) and (C)(10), including with its motion various documents relevant to this case. The Separation Agreement provided, in relevant part:

> Oram shall assume and be solely responsible for payment of all debts, obligations and liabilities of Freddie's incurred on or prior to the Effective Date [April 9, 2018] to . . . Butzel Long, except for $3500.00 representing one-half of the cost to prepare and finalize this Agreement for execution by the Parties which Freddie's agrees to pay concurrently with the execution of this Agreement. Butzel Long shall provide a letter to Freddie's, in care of [REDACTED], confirming that neither Freddie's nor [REDACTED] shall have any liability or obligation to Butzel Long, except for the foregoing amount.[1]

The Separation Agreement was signed by various stakeholders of Freddie's, including defendant. Importantly, however, it was not signed by a representative of plaintiff, because as stated above, plaintiff was not a party to the Separation Agreement.

However, an April 9, 2018 letter referenced by the Separation Agreement was drafted and signed by a representative of plaintiff and stated as follows:

> Pursuant to paragraph 1(g) of the Business Separation Agreement ("Agreement"), dated, April 9, 2018, between John Z. Oram, individually and as Trustee of the John Oram Trust . . . , Freddie's, LLC ("Freddie's"), and . . . [REDACTED], Butzel Long acknowledges and consents to the assumption by Oram of all debts, obligations and liabilities of Freddie's to Butzel Long, and that neither Freddie's nor [REDACTED] shall have any liability or obligation to Butzel Long except for the sum of $3500.00 which Freddie's has agreed to pay concurrently with the execution of the Agreement.

In its brief in support of its motion for summary disposition, plaintiff argued that it was entitled to summary disposition for the following three reasons. First, "Defendant's failure to file a counter-affidavit denying his indebtedness to Plaintiff after Plaintiff filed an affidavit substantiating its account stated/open account claim constitutes prima facie evidence of Defendant's indebtedness" under MCL 600.2145. Second, "Defendant's liability is . . . established by Defendant's multiple payments to Plaintiff totaling $13,000.00 since April 9, 2018—i.e., after Defendant's assumption of the subject debt." (Emphasis omitted.) Third, defendant failed to file his initial disclosures, which was "part of a repeated pattern by Defendant to defend this case through delay and with hopes of increasing the costs."

Defendant, in his response, provided additional background facts and made counter-allegations. Defendant explained that Freddie's retained plaintiff in about 2016 for assistance with starting a medical-marijuana business. Defendant asserted that plaintiff thereafter "violated the confidential relationship between Freddie's, its members and Butzel (and MRPC 1.7) by using Freddie's as a model to assist other people attempting to start a marijuana business in our

---

[1] Plaintiff redacted the stakeholders of Freddie's who are not parties to this action.

community." Defendant further asserted that "upon information and belief, [Butzel] recruited other clients 'on Freddie's clock' and charged Freddie's for the work performed for both Freddie's and the other clients (in violation of the Michigan Rules of Professional Conduct)," which resulted in Freddie's deciding that it "would not make any further payments to Butzel because of Butzel's fraudulent conduct." Defendant explained that this dispute culminated in his execution of the Separation Agreement, in which, according to his affidavit, he "agreed to assume responsibility for [a] $15,000 charge."[2] Defendant stated in his affidavit that he "dispute[s] owing Butzel Long any money – but for the $2,000 balance, of the $15,000, that I reluctantly agreed to pay into order to sever my ties with Butzel Long and resolve any amounts that were owing."

Defendant argued that he was entitled to summary disposition of the breach-of-contract claim because "it is undisputed that Butzel was never a party to the Separation Agreement such that there is no privity of contract between Butzel and Oram. Nor is there a written agreement between Butzel and Oram whereby Oram agreed to pay Butzel for Butzel's claims against Freddie's." Defendant further argued that he was entitled to summary disposition of the open-account claim because "Plaintiff failed to allege any ongoing credit relationship **between the parties** that supports [its] claim for an 'Open Account.'" (Emphasis in original). Defendant also argued that he was entitled to summary disposition of the account-stated claim because "there was never an agreement between the parties as to any indebtedness." Alternatively, defendant argued that in light of the alleged fraud committed by plaintiff, he could be liable for no more than $2,000 in damages.

At a July 2021 hearing on plaintiff's motion for summary disposition, the parties argued consistent with their respective briefs. In addition, concerning the breach-of-contract claim, plaintiff argued that it was a third-party beneficiary of the Separation Agreement, so it was entitled to pursue that claim against defendant notwithstanding that it was not a party to that contract. At the end of the hearing, the trial court granted summary disposition in favor of plaintiff on the breach-of-contract claim, but only as to liability. The trial court ruled that there was a question of fact as to whether the amount of damages was $2,000, as asserted by defendant, or up to about $39,000, as asserted by plaintiff. The trial court further ruled that there was a question of fact as to the claims for open account and account stated. In November 2021, the trial court entered an order memorializing its decision on the record.

Trial was scheduled for July 26, 2022. However, proceedings began that day with the trial court explaining that its staff attorney and counsel had recently worked on, and apparently concluded, a settlement between the parties. Unfortunately, while the parties agreed upon the financial, payment, and default terms, at the time of the hearing, they disagreed about the scope of the release. In particular, while plaintiff wanted a release that would apply only to the two parties involved in this case, defendant wanted a broader release that would apply to "any and all claims from the beginning of time through . . . the settlement date -- by law firms, shareholders, attorneys, et cetera." The trial court ultimately ruled that the parties had a valid settlement, and that the

---

[2] The affidavit implies that defendant incorrectly believed that his execution of the Separation Agreement would render him liable for $15,000 to plaintiff, whereas in reality, the Separation Agreement provided that he would be liable for all charges incurred on or before April 9, 2018.

release essentially would bar "any and all claims arising out of this cause of -- this case and this case number[.]"

On July 28, 2022, the trial court entered an order dismissing the case with prejudice and providing that defendant must pay $20,000 to plaintiff to settle the lawsuit, with an initial payment of $5,000 and 10 monthly installments of $1,500. The order further provided that if defendant defaulted on payment, plaintiff "shall be permitted to reinstate this case for entry of judgment against [defendant] in the principal amount of $25,000 less any monies [already] paid . . . ." The trial court subsequently denied a motion for reconsideration filed by defendant asking it to vacate the settlement order.

On September 21, 2022, defendant filed a claim of appeal, initiating Docket No. 363083. On October 12, 2022, defendant filed a motion for an escrow order in the trial court, asking the trial court to allow him to pay the settlement money into escrow in lieu of paying it directly to plaintiff. Plaintiff opposed the motion, explaining that defendant currently was in default and that the court rules did not allow for such an escrow payment. A few days later, plaintiff moved to reinstate the case and enter judgment against defendant in the amount of $25,000, as defendant had yet to make any of the required payments under the settlement order.

On October 28, 2022, the trial court denied the motion for an escrow order. On November 2, 2022, the trial court entered an order reinstating the case and entering judgment in favor of plaintiff in the amount of $25,000. In Docket No. 363852, defendant appeals that November 2, 2022 order.

Defendant filed identical briefs in both appeals, arguing that the trial court erred by (1) entering the settlement order, as the parties did not agree to the scope of the release; (2) failing to grant him summary disposition of the breach-of-contract claim, as plaintiff was not a party to the Separation Agreement; (3) failing to grant him summary disposition of the open-account and account-stated claims, as there was never an account between the parties; (4) not allowing him to escrow the $20,000 settlement money in dispute, as the trial court had that discretionary authority under the court rules; and (5) entering judgment against him through the November 2, 2022 order, as the trial court was divested of jurisdiction to do so by the fact that he had previously filed a claim of appeal in this case. Plaintiff has answered, arguing that (1) defendant is correct that the trial court erred by entering the settlement order because there was no "meeting of the minds" on the scope of the release; (2) the trial court correctly granted summary disposition in its favor as to liability on the breach-of-contract claim, as plaintiff was a third-party beneficiary of the Separation Agreement; and (3) the trial court erred by failing to grant summary disposition in its favor as to the open-account and account-stated claims, given that defendant was a successor-in-interest to Freddie's, and he failed to file a counter-affidavit as required by statute.

We agree with the parties that the trial court erred by entering the settlement order.[3] Consequently, as explained in Part III.C, *infra*, the fourth and fifth issues raised by defendant

---

[3] A valid settlement requires agreement to "essential terms," including the scope of the release. See *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 454; 733 NW2d 766 (2006). As both

concerning the trial court's post-July 28, 2022 orders are moot. Therefore, the only issues before us involve the breach-of-contract claim, as well as the open-account and account-stated claims. Our consideration of those issues follows below.

## II. STANDARD OF REVIEW

"This Court reviews de novo a circuit court's summary disposition ruling." *Dalley v Dykema Gossett*, 287 Mich App 296, 304; 788 NW2d 679 (2010). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id.* "The trial court properly grants summary disposition to the opposing party under MCR 2.116(I)(2) if the court determines that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." *Washburn v Michailoff*, 240 Mich App 669, 672; 613 NW2d 405 (2000).

"The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). This Court also reviews de novo questions of statutory and court-rule interpretation. *Truel v City of Dearborn*, 291 Mich App 125, 131; 804 NW2d 744 (2010).

## III. DISCUSSION

## A. BREACH OF CONTRACT

Defendant argues that the trial court erred by granting summary disposition in favor of plaintiff on its breach-of-contract claim to the extent of liability and leaving only the issue of damages for trial. Defendant contends that the trial court should have granted him summary disposition of that claim under MCR 2.116(I)(2) because the parties did not have a contractual relationship. We disagree with defendant and affirm the trial court's ruling on this issue.

"A party claiming a breach of contract must establish by a preponderance of the evidence (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *AFT Mich v Mich*, 303 Mich App 651, 660; 846 NW2d 583 (2014) (quotation marks and citation omitted). "A valid contract has five elements: (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Id.* (quotation marks and citation omitted).

It is undisputed that plaintiff was not a party to the Separation Agreement, which obligated defendant to pay Freddie's outstating debt to plaintiff. Thus, plaintiff and defendant did not have a direct contractual relationship and, as a result, plaintiff's breach-of-contract claim presumptively

---

parties acknowledge on appeal, there was no agreement to the scope of the release in the trial court. Moreover, given the somewhat contentious nature of the July 26, 2022 proceedings, we question the extent to which the parties ever had a "meeting of the minds." See *id*. at 453. Thus, as the parties concede, the July 28, 2022 settlement order must be set aside.

would fail. See *id*. However, plaintiff asserts, it nonetheless is entitled to maintain this claim against defendant because it was a third-party beneficiary of the Separation Agreement. Consequently, the issue before us is whether plaintiff was a third-party beneficiary of the Separation Agreement, thereby allowing it to maintain a breach-of-contract claim against defendant for failure to pay outstanding debt incurred on or before April 9, 2018.

MCL 600.1405 provides, in relevant part:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

This statute "draws a distinction between intended third-party beneficiaries who may sue for a breach of a contractual promise in their favor, and incidental third-party beneficiaries who may not." *Brunsell v City of Zeeland*, 467 Mich 293, 296; 651 NW2d 388 (2002). That is, MCL 600.1405 "does not empower just any person who benefits from a contract to enforce it. Rather, it states that a person is a third-party beneficiary of a contract only when the promisor undertakes an obligation 'directly' to or for the person." *Id*. at 297 (quotation marks and citation omitted). "By using the modifier directly, the Legislature intended to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract." *Schmalfeldt v N Pointe Ins Co*, 469 Mich 422, 428; 670 NW2d 651 (2003). "An objective standard is to be used to determine, from the form and meaning of the contract itself, whether the promisor undertook to give or to do or to refrain from doing something directly to or for the person claiming third-party beneficiary status." *Id*. (citations omitted).

Given these principles, we conclude that plaintiff was a third-party beneficiary of the Separation Agreement. That contract provided that "Oram shall assume and be solely responsible for payment of all debts, obligations and liabilities of Freddie's incurred on or prior to the Effective Date [April 9, 2018] to . . . Butzel Long." In other words, defendant assumed an obligation to "directly" pay outstanding fees to plaintiff, thereby providing a direct benefit to plaintiff. See MCL 600.1405(1). Moreover, plaintiff was expressly named in the contract as the beneficiary of this payment obligation. See *Schmalfeldt*, 469 Mich at 428. This is not a case where, for example, defendant contractually promised to assume all debts of Freddie's without naming or otherwise identifying the creditors of Freddie's. Rather, this is a case where defendant and the other contracting parties were clearly aware of the scope of his obligations to Freddie's. See *id*. Consequently, plaintiff was a third-party beneficiary of the Separation Agreement.

Accordingly, because plaintiff Butzel Long was a third-party beneficiary of the Separation Agreement, it is entitled to maintain its breach-of-contract claim against defendant notwithstanding that it was not a party to the Separation Agreement. Thus, we affirm the trial court's grant of summary disposition in plaintiff's favor as to liability on the breach-of-contract claim.

## B. OPEN ACCOUNT AND ACCOUNT STATED

Defendant argues that the trial court erred by failing to grant summary disposition in his favor regarding plaintiff's claims for open account and account stated. Plaintiff, in contrast, argues that the trial court erred by failing to grant summary disposition in its favor regarding those claims.[4] On this issue, we agree with defendant.

"Michigan has recognized a number of collection actions. These actions include open account claims . . . and account stated claims. The purpose of these causes of action is to recover sums due that arose out of a course of dealing between the parties." *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543, 553; 837 NW2d 244 (2013). "An 'open account' is traditionally defined as 1. an unpaid or unsettled account [or] 2. an account that is left open for ongoing debit and credit entries and that has a fluctuating balance until either party finds it convenient to settle and close, at which time there is a single liability." *Id*. at 553-554 (cleaned up). On the other hand, "[a]n account stated action is based on an agreement, between parties who have had previous transactions of a monetary character, that all the items of the accounts representing such transactions are true and that the balance struck is correct, together with a promise, express or implied, for the payment of such balance." *Id*. at 554 (quotation marks and citation omitted). "Importantly, an open account may be converted into an account stated[.]" *Id*.

> The conversion of an open account into an account stated, is an operation by which the parties assent to a sum as the correct balance due from one to the other; and whether this operation has been performed or not, in any instance, must depend upon the facts. That it has taken place, may appear by evidence of an express understanding, or of words and acts, and the necessary and proper inferences from them. When accomplished, it does not necessarily exclude all inquiry into the rectitude of the account. The parties may still impeach it for fraud or mistake. [*Id*. at 554-555 (cleaned up).]

"An account stated, like all contracts, requires mutual assent." *Id*. at 557. Similarly, an open account "arises out of the course of dealing between a creditor and debtor," but "there is no assent to a balance due." *Id*. at 563, 569.

In this case, the parties agree that they did not have a direct contractual relationship establishing an open account or an account stated. According to defendant, the absence of such a contractual relationship is fatal to plaintiff's claims for open account and account stated. Plaintiff

---

[4] Plaintiff did not file a cross-appeal raising this argument. However, we conclude that a cross-appeal was not necessary because this argument is better characterized as an alternate ground for affirmance, not a request for greater relief. See *Boardman v Dep't of State Police*, 243 Mich App 351, 358; 622 NW2d 97 (2000). Regardless, for the reasons explained herein, we disagree with plaintiff on the merits of this argument.

We note that even if we agreed that plaintiff was entitled to summary disposition on its claims for open account and account stated, its failure to file a cross-appeal means that the issue of damages remains a question of fact for trial.

disagrees, arguing that its open-account claim is warranted because "[defendant] is the successor to Freddie's for purposes of the money owed to [plaintiff] for the legal services that [plaintiff] provided to Freddie's, pursuant to the Separation Agreement. This makes him liable on an open-account claim to pay that money to [plaintiff]." Plaintiff further argues that its account-stated claim is warranted because defendant failed to submit a counter-affidavit disputing its affidavit of account, and under MCL 600.2145, "the failure to submit a counter-affidavit to an affidavit of account warrants summary disposition in favor of an open account claimant."

We conclude that defendant is entitled to summary disposition on this issue. Claims for open account and account stated presumptively require "a course of dealing between the parties." See *id*. at 553. Here, while it is undisputed that Freddie's and plaintiff had some type of open account or account stated between themselves, that relationship was not between defendant, personally, and plaintiff. Moreover, plaintiff has offered no persuasive reason or explanation for why an open account or account stated would exist in this case notwithstanding the absence of a course of dealing between the parties or other direct contractual relationship. That is, while we acknowledge that, for example, a creditor may assign its right to receive a debt to a third party, see, e.g., *Velocity Investments, LLC v Cocina*, 77 AD3d 1306, 1306; 909 NYS2d 853 (NY App Div 4th, 2010) (transfer of right to collect credit-card debt to a third party under a claim of account stated), plaintiff has not clearly articulated a theory as to why its claims for open account and account stated may be pursued against defendant, who volunteered for the obligation to pay the debt incurred by the original debtor, Freddie's, through the Separation Agreement. The difficulty is compounded by the fact that plaintiff was not itself a party to the Separation Agreement. Under these circumstances, where plaintiff has not satisfactorily explained why it is entitled to prevail on this issue, we decline to grant plaintiff the relief it requests in this regard. See *Etefia v Credit Tech, Inc*, 245 Mich App 466, 471; 628 NW2d 577 (2001).[5]

We acknowledge that plaintiff raises two distinct arguments as to why it should prevail. However, neither of these arguments have merit. First, plaintiff argues that "[defendant] is the successor to Freddie's for purposes of the money owed to [plaintiff] for the legal services that [plaintiff] provided to Freddie's," so its open-account claim is viable. We disagree because "[o]nce a limited liability company comes into existence, limited liability applies, and a member or manager is not liable for the acts, debts, or obligations of the company." *Duray Dev, LLC v Perrin*, 288 Mich App 143, 151; 792 NW2d 749 (2010). Thus, defendant does not necessarily succeed to the debt incurred by Freddie's. Moreover, while we acknowledge that the Separation Agreement renders defendant contractually liable for the debt under the theory of third-party beneficiary, plaintiff provides no authority for the proposition that the same third-party-beneficiary theory operates to transfer the underlying open-account liability to defendant as well. Consequently,

---

[5] For instance, a discussion of the law regarding assignment and delegation, particularly as it relates to claims for open account and account stated, might have aided our consideration of this issue.

given the posture of the case before us, we cannot conclude that plaintiff possesses an open-account claim against defendant.[6]

Second, plaintiff argues that because defendant failed to file a counter-affidavit in the trial court, under MCL 600.2145, its claim for account stated is presumed to be valid. In this regard, MCL 600.2145 provides, in relevant part:

> In all actions brought in any of the courts of this state, to recover the amount due on an open account or upon an account stated, if the plaintiff or someone in his behalf makes an affidavit of the amount due, as near as he can estimate the same, over and above all legal counterclaims and annexes thereto a copy of said account, and cause a copy of said affidavit and account to be served upon the defendant, with a copy of the complaint filed in the cause or with the process by which such action is commenced, *such affidavit shall be deemed prima facie evidence of such indebtedness, unless the defendant with his answer, by himself or agent, makes an affidavit* and serves a copy thereof on the plaintiff or his attorney, denying the same. . . . (Emphasis added.)

"If an account stated exists, an unanswered affidavit under [MCL 600.2145] creates a prima facie case that the party failing to respond owes the other party the amount stated." *Echelon Homes, LLC v Carter Lumber Co*, 261 Mich App 424, 435; 683 NW2d 171 (2004), rev'd in part on other grounds, 472 Mich 192 (2005). "Prima facie evidence is evidence which, if not rebutted, is sufficient by itself to establish the truth of a legal conclusion asserted by a party." *American Cas Co v Costello*, 174 Mich App 1, 7; 435 NW2d 760 (1989). "In civil matters, a presumption operates to shift the burden of going forward with the evidence." *Id*.

In *Velardo & Assoc v Oram*, unpublished per curiam opinion of the Court of Appeals, issued October 7, 2008 (Docket No. 279801), this Court held that the defendant's failure to file a counter-affidavit under MCL 600.2145 did not entitle the plaintiff to summary disposition because the defendant raised other defenses and evidence, such as the lack of receipt of itemized bills, and "[t]hese proofs establish an issue of fact regarding whether the parties[] actually agreed to a sum

---

[6] In *Fisher*, our Supreme Court explained that when an attorney has a claim for unpaid legal fees against a client, if the terms of the credit relationship between the client and the attorney "were provided for in their contract for services, a mutual and open account current claim [cannot] be established on the basis of the [client's] mere failure to perform pursuant to their contractual obligations." *Fisher*, 494 Mich at 567-568. "Under those circumstances, the creditor's remedy is to timely pursue a breach of contract action when the debtor fails to live up to the terms of the underlying agreement." *Id*. at 568. In this case, plaintiff has failed to show that the terms of the credit relationship between Freddie's and plaintiff is better characterized as an open account, as opposed to an ordinary contractual relationship.

certain and, if they did, what the amount was. And absent assent and a balance struck on the amount due, there is no account stated." *Id*. at 4.[7]

So too here. While defendant did not file a counter-affidavit under MCL 600.2145, he did unquestionably show that plaintiff was not a party to the Separation Agreement and, thus, that the parties did not have a mutual contract. That is, defendant rebutted the prima facie evidence of the statutory affidavit with other evidence. As a result, his failure to file a counter-affidavit did not entitle plaintiff to summary disposition.[8]

Accordingly, because plaintiff and defendant did not have a direct contractual relationship or course of dealing with each other, and because plaintiff has not otherwise persuasively argued that it is entitled to maintain claims for open account and account stated, we conclude that defendant is entitled to summary disposition of these two claims.

## C. JURISDICTION AND ESCROW

Finally, defendant argues that the trial court erred in two respects after its July 28, 2022 final order dismissing the case and ordering him to pay the purported $20,000 settlement amount to plaintiff. First, defendant argues that the trial court should have applied "equitable" principles and allowed him to place the $20,000 in escrow in lieu of paying it directly to plaintiff while his appeal is pending. Second, defendant argues that the trial court lacked jurisdiction to enter its November 2, 2022 order entering judgment against him in the amount of $25,000 because he had already filed a claim of appeal from the July 28, 2022 final order, thus divesting the trial court of jurisdiction under MCR 7.208(A).[9]

These issues are moot. See *In re Tchakarova*, 328 Mich App 172, 178; 936 NW2d 863 (2019) ("A matter is moot if this Court's ruling cannot for any reason have a practical legal effect on the existing controversy.") (quotation marks and citations omitted). For the reasons explained, we have concluded that the trial court erred by entering its July 28, 2022 final order dismissing the case and ordering defendant to pay $20,000 to plaintiff because, as the parties both concede on appeal, there was no valid $20,000 settlement agreement between them. Therefore, the July 28,

---

[7] "Unpublished opinions are . . . not binding authority but may be persuasive or instructive." *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020).

[8] We note that "[a]lthough a stated account may be a species of a breach of contract claim, it has different elements and is based on a different agreement made at a different time." *Effel v McGarry*, 339 SW3d 789, 793 (Tex App, 2011). Here, plaintiff's claim for account stated is based upon the Separation Agreement, the contract supporting its breach-of-contract claim. Moreover, "[a]n account stated assumes the existence of some indebtedness between the parties, or an express agreement to treat the statement as an account stated. It cannot be used to create liability where none otherwise exists." *M Paladino, Inc v Lucchese & Son Contracting Corp*, 247 AD2d 515, 516; 669 NYS2d 318 (NY App Div 2nd, 1998) (citation omitted). Arguably, plaintiff is attempting to use a theory of account stated to create liability where it would not otherwise exist.

[9] Plaintiff did not reply to either of these arguments in its brief on appeal despite the fact that these arguments clearly were raised as independent issues by defendant.

2022 final order was erroneous and, at this stage of the proceedings, defendant is not required to pay any money to plaintiff or place any money in escrow under a purported settlement agreement. Further, because that order was erroneous, it follows that the trial court's subsequent November 2, 2022 order finding defendant in default for failing to satisfy the purported settlement agreement must be set aside as well. Both of these orders are therefore vacated.

## IV. CONCLUSION

We affirm the trial court's grant of summary disposition in favor of plaintiff as to liability on its breach-of-contract claim. However, we reverse the trial court's ruling that there was a question of fact as to plaintiff's open-account and account-stated claims, and remand to that court for summary disposition in defendant's favor regarding those claims. Further, we vacate the trial court's July 28 and November 2, 2022 orders, and remand to that court for further proceedings consistent with our opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Adrienne N. Young
/s/ Randy J. Wallace